63530. ROLLINS v. GREAT SOUTHWEST FIRE INSURANCE COMPANY.

QUILLIAN, Chief Judge.

Appellant Rollins had a fire insurance policy on his house. While appellant was away on a visit to Florida, his house and its contents were destroyed by fire. When appellee refused to pay his claim under the policy, appellant brought this action to recover. A jury trial resulted in a verdict and judgment for appellee, from which this appeal is taken. *Held:*

1. The general grounds are enumerated.

After appellant produced an apparent prima facie case for some recovery on the policy, appellee presented evidence tending to establish the defense of arson by appellant, as follows:

About four years before the loss, appellant commenced building his house near Lyons, Toombs County. Much of the work was contracted out and some done by appellant. By 1978 the house was substantially completed but lacked some plumbing fixtures, a water heater, a septic tank, and a few other things. At the time appellant was 50 years old, his second wife was in the process of divorcing him, and he began living in the house with Cindy Strickland, a 17-year-old woman with a year-old child. In January 1979, appellant's bank, which held a deed to secure debt on the property, required appellant to take out fire insurance on the house. Appellant obtained such a policy from appellee for $34,000 on the building and $4000 on the contents. The house was destroyed by fire in the early morning hours of June 4, 1979, while appellant and Strickland were away. At that time appellant was unemployed with no steady source of income, Strickland apparently had been laid off from her employment, and appellant had several unsatisfied judgments against him by creditors. The electricity to the house had been discontinued because

of nonpayment and the house gas supply tank had been removed. There were no water or sewer connections to the house. Appellant and Strickland did their cooking in the fireplace. An attempt to sell the house with an asking price of $50,000 had not succeeded. Evidence of arson was unrebutted. It showed that a trail of diesel fuel had been laid from the interior of the house through the open door out to a point about 50 feet from the building and ignited with matches.

To counter evidence that he might have burned his house or caused it to be burned, appellant presented evidence that threats had been made against him and Strickland. Most of this testimony was incompetent hearsay, however. The only competent testimony as to an alleged threat came from Strickland's mother, and she did not believe it was a threat. There was also evidence that vandalistic acts had been committed on appellant's property.

Appellant and Strickland both testified that when the fire occurred they were visiting some of appellant's relatives in Palatka, Florida, about a four hour drive from the house, where they had been for a day and a half prior to the fire. Two of the relatives testified that appellant and Strickland were within their presence during the stay except for brief periods and while they were asleep. The fire was discovered at 2:15 a.m. and appellant, Strickland and the relatives testified he was called about the fire about 7:00 a.m. Appellant testified that the house was locked with a padlock when they left and the only keys for it were in his and Strickland's possession in Florida.

The padlock which secured the house door was found by fire investigators. It was in the unlocked position. The investigator testified there was no indication the lock had been forced and that if the lock was in the locked position at the time of the fire it would have been welded into a locked position.

Appellant's and Strickland's credibility was put in question in several respects. They had a close relationship as they had lived together. At the time of the trial in 1980 Strickland was 8 months pregnant with appellant's child and they intended to get married. Their testimony and prior statements were conflicting, inconsistent, or equivocal on several material matters involving their actions before and after the fire. As to the house contents claimed to have been burned, it was shown that several items had been removed prior to the fire, that others could not be found in the debris and that many of the values claimed could not be substantiated. The deputy sheriff who discovered the fire testified that appellant had a bad reputation and that he would not believe appellant under oath.

Although the evidence that appellant set or caused the fire to be set was circumstantial, such evidence can be used to prove any fact. *Citizens &c. Nat. Bank v. Hodnett,* 139 Ga. App. 839, 841 (229 SE2d

792).

"In passing on the sufficiency of the evidence to support the verdict, the appellate courts are to afford the evidence that view which is most favorable to the appellee and which is designed to uphold the verdict. All conflicts must be rendered against the appellant, and if there is any evidence to support the verdict it must be affirmed. [Cits.]" *Mundy v. Cincinnati Ins. Co.,* 141 Ga. App. 106 (8) (232 SE2d 621).

We find the evidence sufficient to authorize the verdict and judgment in favor of appellee.

2. The trial court did not err in giving appellee's request to charge number 4 concerning the type of evidence required to establish the defense of arson, as appellant made only a general objection thereto.

" 'To be reviewable an objection to a trial court's charge must be more than a mere general objection which points out no specific defect; the objection must be sufficiently specific to bring into focus the precise nature of the alleged error so that it can be reasonably understood by the court and afford the trial judge an opportunity to correct any error in his charge without the necessity of an appeal. [Cits.]' *Butts v. Brooks,* 138 Ga. App. 653, 654 (227 SE2d 76)." *Harper v. Ga. Sou. &c. R. Co.,* 140 Ga. App. 802 (7), 806 (232 SE2d 118).

3. In the two remaining enumerations error is asserted because the trial court overruled appellant's objections to the cross examination of himself and Strickland concerning their personal lives and morals.

Over an objection of irrelevant, appellant testified that Strickland had been living with him for quite a while at the time of the fire. Over similar objection, Strickland testified that she had a 3-year-old child and was 8 months pregnant by appellant. The colloquy indicates that she was obviously pregnant.

The scope of cross-examination is within the discretion of the trial court, "and an appellate court will not reverse absent abuse of discretion 'unless some gross outrage to the party, and resulting damage to his cause, clearly appear.' [Cit.]" *Classic Restorations v. Bean,* 155 Ga. App. 694 (1) (272 SE2d 557).

Under the circumstances appellee was entitled to show the true nature of the relationship between appellant and his principal witness as it affected their credibility and supported appellee's contentions that they had motive and opportunity to cause the fire and that they conspired together to create the loss, cover up its cause, and inflate the amount of damage claimed.

" 'It is competent for either party to show the interest taken in the case by a material witness for the opposite party; and this may be

done on cross-examination of the witness himself.' [Cit.] 'A party may show anything which may, in the slightest degree, affect the credit of an opposing witness.' [Cit.]" *Walraven v. Walraven,* 76 Ga. App. 713 (5), 720 (47 SE2d 148).

Moreover, even assuming error, it was cured by appellant either subsequently introducing or failing to object to other evidence that Strickland had been living with appellant in June 1979 for nearly a year after his wife left but before the divorce was final, that they were not married, that Strickland's mother and others did not approve of the way they were living, and that they intended to marry.

*Judgment affirmed. Shulman, P. J., and Carley, J., concur.*

DECIDED APRIL 16, 1982.

*D. Duston Tapley, Jr.,* for appellant.
*J. Samuel Choate, Jr., Carl J. Surrett,* for appellee.