A90A1180. ALLSTATE INSURANCE COMPANY
v. TALBOT et al.
(400 SE2d 694)

CARLEY, Chief Judge.

Appellant-plaintiff issued a policy of insurance covering appellee-defendants' home. After a fire, appellees submitted claims to recover under the policy. Appellant's investigator determined that the fire had been intentionally set and that an accelerant had been used. Thereafter, appellant initiated the instant action by filing a petition seeking a declaratory judgment that, under the arson clause in its policy, it owed no contractual duty to pay appellees' claims. Appellees answered and counterclaimed, seeking to recover under the policy and, in addition, bad faith penalties and attorney's fees. Subsequently, appellees moved for summary judgment on the issue of appellant's liability. The trial court granted summary judgment in favor of appellees as to appellant's liability under the policy but denied summary judgment as to appellant's liability for bad faith penalties and attorney's fees. Appellant appeals from this partial grant of summary judgment in favor of appellees.

1. There is authority for the proposition that a defendant can obtain affirmative relief by way of counterclaim in an otherwise *viable* declaratory judgment action. *Myers v. United Svcs. Auto. Assn.*, 130 Ga. App. 357 (203 SE2d 304) (1973). However, no authority has been cited by appellees for the proposition that a defendant can obtain affirmative relief by way of counterclaim in an otherwise *non-viable* de-

claratory judgment action. Compare *Holcomb v. Ellis*, 259 Ga. 625 (2) (385 SE2d 670) (1989), wherein the *plaintiff* amended his complaint for declaratory relief so as to *add* a count for affirmative relief. It is clear that a viable declaratory judgment action was *not* initiated by appellant's petition (see *State Farm Fire & Cas. Co. v. Fuller*, 150 Ga. App. 387 (258 SE2d 13) (1979)), and that appellant's petition did *not* serve to invoke the trial court's initial subject matter jurisdiction over resolution of the contractual dispute. See *Kaylor v. Kaylor*, 236 Ga. 777 (225 SE2d 320) (1976); *Logan Paving Co. v. Peoples Bank & Trust*, 196 Ga. App. 42 (395 SE2d 287) (1990); *Royal Lepage &c. of Atlanta v. Spalding Partners*, 192 Ga. App. 284 (1) (384 SE2d 424) (1989); *Oxford Fin. Co. v. Dennis*, 185 Ga. App. 177 (363 SE2d 614) (1987). Thus, there is some doubt as to whether the trial court had jurisdiction to enter *any* order in this case. For purposes of this appeal, however, we will assume without deciding that the trial court did have jurisdiction to address the merits of appellees' motion for summary judgment on their counterclaim notwithstanding the lack of any subject matter jurisdiction whatsoever over appellant's non-viable claim for declaratory relief.

2. Summary judgment would be proper *only* if the evidence, when construed most strongly against appellees and most favorably for appellant, showed that *no* genuine issue of material fact remained as to appellant's arson defense and that appellees were entitled to judgment as a matter of law. " '(I)t has been held that to establish a prima facie case of incendiarism for the purpose of denying coverage under a fire policy it is sufficient to show: arson by someone; motive by the suspect; and unexplained surrounding circumstantial evidence implicating the suspect.' [Cit.]" *Southern Trust Ins. Co. v. Braner*, 169 Ga. App. 567, 568 (1) (314 SE2d 241) (1984). In the instant case, there is evidence as to the first two of these three elements and, in granting appellees' motion for summary judgment, the trial court apparently concluded that appellees met their burden by showing that no genuine issue of material fact remains as to the third.

It is clear, however, that evidence of *opportunity* on the part of an insured who has a motive to commit an arson can satisfy the third element and will, if believed by a jury, authorize a finding in favor of the insurer. In *Fortson v. Cotton States Mut. Ins. Co.*, 168 Ga. App. 155, 158 (1) (308 SE2d 382) (1983), it was explicitly recognized that the insurer's arson defense was "not frivolous or unfounded" because "[a]n insurance company can prevail in an arson defense based solely on circumstantial evidence if it shows that the fire was of incendiary origin and that the [insured] had both the *opportunity and motive* to have the fire set. [Cits.]" (Emphasis supplied.) This has also been implicitly recognized in other cases. See generally *Pennsylvania Millers Mut. Ins. Co. v. Baker*, 180 Ga. App. 504 (1) (349 SE2d 527) (1986);

*Smith v. Federated Mut. &c. Ins. Co.*, 124 Ga. App. 693 (185 SE2d 588) (1971). The holdings in these cases are in no way inconsistent with that of *Southern Trust Ins. Co. v. Braner*, supra. To the contrary, they are entirely consistent applications of the *Braner* tripartite test, with evidence of the insured's *opportunity* to commit the arson satisfying the third element thereof.

Insofar as Mrs. Talbot is concerned, she was actually present when the fire started and, thus, she clearly had the opportunity to have set it. See *Pennsylvania Millers Mut. Ins. Co. v. Baker*, supra at 505 (1), wherein *Braner* was distinguished on the basis of the existence of "circumstantial evidence from which it may be inferred that the insured was *present* at the house for several minutes a⌢ the fire started. Such evidence creates more than the 'shadowy semblance' of a fact issue. . . . [Cits.]" (Emphasis supplied.) See also *Smith v. Federated Mut. &c. Ins. Co.*, supra at 693, wherein there was evidence "that placed [the insured] *at the scene* in the early hours of the morning and shortly before the fire broke out." (Emphasis supplied.) It is true that, *"[w]ithout more,* the fact that [the insured] had exclusive access to the property, as many if not most property owners do, raises no inference of incendiarism on his part." (Emphasis supplied.) *Southern Trust Ins. Co. v. Braner*, supra at 569. However, the evidence of Mrs. Talbot's actual presence at the scene constitutes a showing of "more" than her "exclusive access to the property." Compare *Southern Trust Ins. Co. v. Braner*, supra, wherein there was *no* evidence of the insured's presence when a fire occurred at his *second* home which had been left locked by him the *day before* the fire.

Mrs. Talbot was not alone in the home when the fire started and she was, therefore, not the only occupant who had an opportunity to have set it. However, the insured in *Pennsylvania Millers Mut. Ins. Co. v. Baker*, supra, was likewise *not* the sole occupant of the house when the fire started and here, as there, Mrs. Talbot is the *only* occupant who did have a motive to commit the arson. The inculpatory circumstantial evidence certainly does not demand a finding that Mrs. Talbot *had* committed the arson and there is certainly exculpatory evidence that she did *not*. However, the weight of the evidence and the credibility of the witnesses are matters for jury resolution. The issue to be decided is whether a jury, disbelieving the exculpatory evidence and believing the inculpatory evidence, would be authorized to find that Mrs. Talbot had set the fire. We hold that a jury *would* be authorized so to find and the trial court usurped the jury's function as the finder of fact.

With regard to Mr. Talbot, the evidence shows only that he was miles away at the time the fire was *discovered*. This evidence does not, therefore, demonstrate, *as a matter of law*, that Mr. Talbot had *no* opportunity whatsoever to have *set* the fire and, therefore, he did

*not* meet his burden of proving that no genuine issue of material fact remained as to his defense of alibi. Moreover, opportunity is not the *only* inculpatory circumstance which will satisfy the third element of the *Braner* tripartite test. "The facts which [can be] presented to show the responsibility of the defendant . . . . are the motive and opportunity of the accused, his prior threats, subsequent admissions of fact, and suspicious conduct on his part." *Grimes v. State*, 79 Ga. App. 489, 495 (1) (54 SE2d 302) (1949). There was evidence that Mr. Talbot had previously threatened to kill his wife if she should ever leave him. On the night of the fire, a divorce action was pending and Mrs. Talbot was occupying the house with another man. There was also evidence that, prior to the fire, Mr. Talbot had been "kicked out" of the house and that he had ordered the shut-off of the utilities. As is the case with Mrs. Talbot, the inculpatory evidence does not necessarily demand a finding that he had committed the arson and there is certainly exculpatory evidence to the contrary. However, it is for the jury and not the trial court to resolve fact and credibility issues.

*Judgment reversed. Deen, P. J., Birdsong, Pope and Cooper, JJ., concur. Beasley, J., concurs in judgment only. McMurray, P. J., Banke, P. J., and Sognier, J., dissent.*

McMurray, Presiding Judge, dissenting.

In my view, the superior court did not err in granting the Talbots' motion for summary judgment on the issue of plaintiff's liability under the insurance policy. Since I would affirm the judgment of the superior court, I respectfully dissent.

Plaintiff Allstate Insurance Company issued a Deluxe Homeowners Policy covering a house owned by defendants Christopher E. Talbot and Beverly H. Talbot and located in Hahira, Georgia. The coverage provided under the policy included both dwelling and property damage in the event of fire.

On the morning of April 23, 1988, the house was damaged by fire. At that time the Talbots were having marital and financial difficulties, neither was living in the house, and all utilities to the house had been disconnected. Nonetheless, Mrs. Talbot, along with some friends, elected to spend the night of April 22-23, 1988, in the house. The other persons present were Kenneth Inman, whom Mrs. Talbot was dating at the time, defendant Carrie L. Garay, Harold G. Miller, whom Mrs. Carrie L. Garay was dating at the time, and two minor children of Carrie L. Garay.

At approximately 7:10 a.m., Mrs. Talbot was awakened by Mr. Inman and told that the house was on fire. They attempted to warn the others but were unable to reach them through the house, so they went outside and knocked on the windows of the room in which Mr. Miller and Mrs. Garay were staying, then assisted them in getting out

of the house via the window. The four then proceeded to the window of the room in which the children were sleeping, but were unable to save the children.

An investigation into the cause and origin of the fire was initiated by plaintiff. Plaintiff's investigator opined that the fire was intentionally set, using an accelerant.

The Talbots filed their claim to recover under the insurance policy. Plaintiff initiated the case sub judice as a declaratory judgment action seeking an adjudication of its rights, duties, and obligations in regard to the defendants, that is, the Talbots, Carrie L. Garay, and John J. Garay, father of the children killed in the fire. The Talbots answered and counterclaimed seeking to recover the proceeds of the policy, and also seeking bad faith penalties and attorney fees. Subsequently, the Talbots moved for summary judgment on the issue of liability. The Talbots' motion for summary judgment was granted on the issue of plaintiff's liability under the insurance policy and denied as to liability for bad faith penalties and attorney fees. Plaintiff appeals contending that a jury issue remains as to its defense of arson.

1. The Declaratory Judgment Act is governed by the practice rules contained in the Civil Practice Act. *Town of Thunderbolt v. River Crossing Apts.*, 189 Ga. App. 607, 608 (2), 609 (377 SE2d 12). "Since provisions of the Civil Practice Act have been held to be applicable in declaratory judgment actions, *Southeastern Fidelity Fire Ins. Co. v. State Farm &c. Co.*, 118 Ga. App. 861 (165 SE2d 887) (1968), it would appear that the defendant in a declaratory judgment action could interpose a counterclaim against the plaintiff under CPA § 13 [OCGA § 9-11-13]." *Harrison v. Speidel*, 244 Ga. 643, 644, fn. 1 (261 SE2d 577).

It follows that where an insured whose rights have accrued under a policy of insurance is named as a defendant in a declaratory judgment action by an insurer whose obligations have already attached, the insured may, as an alternative to moving for a dismissal of the insurer's declaratory judgment action (which seeks a merely advisory opinion), file a counterclaim to enforce its accrued rights. This occurred in the case sub judice. The filing of the counterclaim for damages serves to change the nature of the action. See *Holcomb v. Ellis*, 259 Ga. 625 (1) (385 SE2d 670).

In my view, the superior court's grant of defendants' motion for summary judgment as to liability under the insurance policy was *not* an advisory opinion. Therefore, the superior court's judgment should be held to be a determination of the parties' accrued rights and obligations.

2. Under the three-part test enunciated in *Southern Trust Ins. Co. v. Braner*, 169 Ga. App. 567, 568 (1) (314 SE2d 241), in order to establish a prima facie case of incendiarism for the purpose of deny-

ing coverage under a fire insurance policy the insurer must show arson by someone; motive by the suspect; and unexplained surrounding circumstantial evidence implicating the suspect. There is some evidence as to the first two parts of this test. However, in my view the third prong of this test, which requires some evidence linking the insured to the arson, that is, evidence that the insured either personally or through agents, has caused or procured the fire to be set, is not satisfied. "Without more, the fact that [the insured] had exclusive access to the property, as many if not most property owners do, raises no inference of incendiarism on his part." *Southern Trust Ins. Co. v. Braner*, 169 Ga. App. 567, 569, supra.

When this third test is applied to the facts of the case sub judice, attention is addressed primarily to Mrs. Talbot. Uncontroverted evidence shows that at the time of the fire, Mr. Talbot was miles away at Moody Air Force Base and there is no evidence that he, either personally or through agents, caused or procured the fire to be set.

Mrs. Talbot was in the house when the fire started, but, as previously stated, this alone does not create an inference of incendiarism on her part. There is no evidence linking her to the arson. *Southern Trust Ins. Co. v. Braner*, 169 Ga. App. 567, 568 (1), 569, supra. Compare *Pennsylvania Millers Mut. Ins. Co. v. Baker*, 180 Ga. App. 504 (1) (349 SE2d 527) (insured driving away from house several minutes after fire started) and *Rollins v. Great Southwest &c. Ins. Co.*, 162 Ga. App. 139 (1) (290 SE2d 353) (insured had only key to padlock securing house and padlock found unlocked after fire, items claimed to have been destroyed in fire shown to have been removed prior to fire).

The evidence in the case sub judice creates mere suspicions and any conclusion attributing the arson to Mrs. Talbot rather than her companions or an unknown third party discloses speculation and conjecture. "[B]efore there is, in legal contemplation, any evidence, the circumstances shown must, in some appreciable degree, tend to establish the conclusion claimed. . . . [*Radcliffe v. Maddox*, 45 Ga. App. 676, 681-682 (2) (165 SE 841)]." *Southern R. Co. v. Ga. Kraft Co.*, 258 Ga. 232, 233 (367 SE2d 539). "Where a civil case rests on circumstantial evidence, the circumstances proved must tend in some proximate and reasonable degree to establish the conclusion claimed, and render less probable all inconsistent conclusions. So, where evidence is not more than a scintilla, if it is dependent entirely upon guess or speculation, it is insufficient to support a verdict. [Cits.]" *Ladson Motor Co. v. Croft*, 212 Ga. 275, 277 (92 SE2d 103).

Additionally, I cannot agree with the position of the majority that the third element of the test from *Southern Trust Ins. Co. v. Braner*, 169 Ga. App. 567, 568 (1), 569, supra, may be proven by evidence of opportunity on the part of the insured to commit an arson.

Such a rule removes the insurer's burden to prove the insured's connection with the arson and invites speculation by the jury. I cannot agree that any such opportunity test is implicit in *Pennsylvania Millers Mut. Ins. Co. v. Baker*, 180 Ga. App. 504 (1), supra, or *Smith v. Federated Mut. &c. Ins. Co.*, 124 Ga. App. 693 (185 SE2d 588), since in both of these cases there is circumstantial evidence implicating the insureds.

In my view, any reliance upon the "opportunity" test from *Fortson v. Cotton States &c. Ins. Co.*, 168 Ga. App. 155, 156 (1), 158 (308 SE2d 382), is misplaced since this decision should be distinguished on the facts. As noted in Division 2 of *Fortson*, Division 1 of that decision, "goes only to the [issues of] bad faith penalties and attorney fees . . . ." In the case sub judice, the Talbots' claims for damages for bad faith and attorney fees remain pending following the denial of their motion for summary judgment in this regard, but these claims are not at issue on this appeal. Instead, this appeal, as in the controlling case of *Southern Trust Ins. Co. v. Braner*, 169 Ga. App. 567, supra, is concerned with the insureds' claim to recover fire loss benefits under an insurance policy. The legal test to be applied to claims for bad faith penalties and attorney fees is distinguishable from the test governing claims for loss benefits under insurance policies. The insured must prove more to support a claim for bad faith penalties and attorney fees than to support a claim for benefits under the policy. Thus, a decision concerned solely with claims for bad faith penalties and attorney fees, such as *Fortson*, is not controlling where, as in the case sub judice, the issues presented involve only claims for loss benefits under insurance policies. Any language in *Fortson*, which purports to relate to claims for loss benefits under insurance policies which are not at issue in that case, should be recognized as obiter dictum, therefore not binding precedent, and disregarded in the face of binding precedent which is supplied in the case sub judice by our decision in *Southern Trust Ins. Co. v. Braner*, 169 Ga. App. 567, supra.

I am authorized to state that Presiding Judge Banke joins in this dissent.

DECIDED DECEMBER 5, 1990 —
REHEARING DENIED DECEMBER 20, 1990 —

*Webb, Carlock, Copeland, Semler & Stair, Dennis J. Webb, William J. Rawls II*, for appellant.

*Coleman, Kitchens, Wolfson & Smith, James R. Smith, Jr., B. Miles Hannan*, for appellees.