### S08A0798. ACEVEDO v. KIM.
(669 SE2d 127)

SEARS, Chief Justice.

This Court granted Deiby "Dave" Acevedo's application for permission to pursue a discretionary appeal from a declaratory judgment by the Muscogee County Superior Court in favor of his former wife, YongMi Kim, construing the child support provision of the parties' 1996 final judgment and decree of divorce. We granted the application to decide whether a complaint for declaratory judgment seeking a determination of the amount due for past child support payments states a claim upon which relief can be granted.[1] We hold that it does.

1. Acevedo and Kim were divorced in Muscogee County Superior Court on September 20, 1996. They had two children, Daniel and Jonathan, born January 12, 1989, and October 23, 1992, respectively. At the time of the divorce, the older child was 7, and the younger child was 3, and the divorce decree ordered Acevedo to pay Kim child support for the children until they reached the age of majority.

The decree set Acevedo's initial child support obligation as

---

[1] See OCGA § 9-11-12 (b) (6).

follows: (a) $1,000 monthly per child from October 1, 1996, through May 31, 1997; and (b) $750 monthly per child from June 1, 1997, through January 31, 1998.[2] The decree further provided that on February 1, 1998, and the first day of February in all succeeding even-numbered years, Acevedo's child support obligation would increase at the same rate that Acevedo's income had increased in the past two years.[3] The formula, though seemingly straightforward, proved difficult in application.

Acevedo paid child support regularly for the first eight years following the divorce. During this time, Kim never once voiced an objection regarding Acevedo's calculations of the amount of the automatic increases in his child support obligation. However, by the summer of 2004, a serious dispute regarding the proper application of the formula for biennial increases had arisen. When Kim, through an attorney, raised a question with Acevedo about the amount of his child support payments over the past eight years, Acevedo did his own calculations and provided them to Kim's attorney. According to Acevedo's calculations, he had actually overpaid Kim by almost $5,000 over the past eight years.[4]

On September 10, 2004, Kim's attorney threatened to sue Acevedo for contempt of court unless he paid Kim almost $35,000 in alleged back-due child support payments within 21 days. Ten days later, on September 20, 2004, Acevedo filed a complaint for declaratory judgment in the Muscogee County Superior Court to determine the amount of his monthly child support obligation. The complaint noted the controversy surrounding "the method of calculation of automatic increase[s]" and asserted the "need for a judicial construction . . . such that the intention of the parties may be given full effect." At the time, Daniel was 15, and Jonathan was 11.[5]

---

[2] The decrease in child support was based on an anticipated decrease in Acevedo's annual income and corresponding increase in Kim's. Acevedo received annual voluntary separation incentive (VSI) payments from the military of approximately $10,800. The decree ordered Acevedo to transfer his entire annual VSI payment of $10,800 to Kim as alimony for the next 18 years, or until Kim died or remarried, starting June 1, 1997.

[3] The first increase, on February 1, 1998, was to be calculated based on the increase in Acevedo's income from the date of the divorce through January 31, 1998.

[4] Acevedo does not seek a refund of the overpayments, given that the money was intended, and actually used, for the support of his two children.

[5] The divorce decree required Acevedo to pay child support until the children reached the age of majority. Thus, it would appear that a determination regarding the proper construction of the child support provision of the divorce decree would settle the uncertainty surrounding not merely his obligation for additional sums for past child support payments, but also the amounts that would be due for future child support payments. However, we decline to rest our decision on this ground, because it is outside the scope of the questions we directed the parties to brief.

Kim answered, denying the need for construction of the divorce decree, and later amended her answer to add a counterclaim for "back child support through January, 2005 in the amount of $56,153.66." The ensuing complicated procedural history in the trial court, which is not relevant to this appeal, concluded with the entry of an August 21, 2007 declaratory judgment ordering Acevedo to pay Kim $54,464.48, without interest, at the rate of $1,000 per month until the debt was paid in full.

After a brief detour through the Court of Appeals, we granted Acevedo's application for discretionary appeal and directed the parties to address two specific questions in their briefs:

> Did [Acevedo's] petition seeking a declaratory judgment as to his obligation for past child support state a claim for relief? *Porter v. Houghton*, 273 Ga. 407 (2001); *Kaylor v. Kaylor*, 236 Ga. 777 (1976); *Oxford Finance Cos. v. Dennis*, 185 Ga. App. 177 (1987).

> If the petition was sufficient to confer jurisdiction on the trial court to enter a declaratory judgment, did the trial court exceed that jurisdiction by granting [Kim] affirmative relief which she apparently did not seek by way of counterclaim? See *Allstate Ins. Co. v. Talbot*, 198 Ga. App. 190 (1990). Compare *Myers v. United Services Auto. Association*, 130 Ga. App. 357 (1973).[6]

2. In 1990, this Court answered the first question in *Weaver v. Jones*.[7] In *Weaver*, the final decree of divorce provided for the wife to have custody and the father to pay child support. It included a provision allowing the child to choose to live with the father at age 14, at which point the mother would have to pay child support to the father. The child went to live with his father when he turned 14, but the mother never paid any child support. After the child turned 18, the father attempted to collect the support payments that had accrued over the past four years, and the mother responded by filing a declaratory judgment action to secure a conclusive determination of her obligations under the divorce decree. We rebuffed the father's claim that a declaratory judgment action was an inappropriate

---

[6] The actual record is not available to this Court when it decides whether to grant a discretionary application and formulates the question or questions the parties should address in their briefs on appeal. The record is now before us, and it reveals that, contrary to the premise of our second question, Kim did, in fact, file a counterclaim to Acevedo's complaint for declaratory judgment. Accordingly, the second question is purely hypothetical, and we will not discuss it any further in this opinion.

[7] *Weaver v. Jones*, 260 Ga. 493 (396 SE2d 890) (1990).

procedural vehicle to decide the issue, holding that a "declaratory judgment is an appropriate means of ascertaining one's rights and duties under a contract and decree of divorce."[8]

The decision in *Weaver* was no aberration. It is well established under Georgia law that a declaratory judgment action is a proper method for determining one's rights and obligations under a divorce decree that is unclear.[9] The parties have offered no sound argument for overruling this line of decisions.

Contrary to the dissent's claim, our decision in *Porter v. Houghton*, which we cited in our question to the parties, does not compel a contrary conclusion.[10] It is true, as we said in *Porter*, a title to land case, that "[t]o proceed under a declaratory judgment a party must establish that it is necessary to relieve himself of the risk of taking some future action that, without direction, would jeopardize his interests."[11] However, unlike the plaintiff in *Porter*, Acevedo's complaint alleged the need for a judicial determination of his rights and obligations under the divorce decree to relieve himself of the risks of his planned future course of action. Acevedo planned to continue denying Kim's claim of back-due child support based on his understanding of the formula set forth in the divorce decree for calculating biennial increases in his support obligation. However, doing so subjected him to the very real risk of being brought up on charges of contempt of court. Thus, he needed direction from a judicial tribunal to remove the uncertainty regarding the consequences of his planned future actions.

*Kaylor v. Kaylor*, a will case cited in our question, is also distinguishable.[12] In that case, the plaintiffs, as executors of the decedent's estate, sued themselves in their individual capacities as the sole beneficiaries under the will. The purpose of the declaratory judgment action was to settle a question relevant for estate tax purposes. We held that it was clear from the face of the complaint that there was "no justiciable controversy between the plaintiffs as executors and the defendants as individuals and beneficiaries under the will" and that "[t]he actual adverse party is the United States

---

[8] *Weaver v. Jones*, 260 Ga. at 493.

[9] *Brown v. Brown*, 265 Ga. 725, 726 (462 SE2d 609) (1995); *Tabernacle Baptist Church v. Dorsey*, 247 Ga. 675, 677 (278 SE2d 378) (1981); *Royal v. Royal*, 246 Ga. 229, 230 (271 SE2d 144) (1980); *Bache v. Bache*, 240 Ga. 3, 3 (239 SE2d 677) (1977). See also *McClure v. Raper*, 277 Ga. 642, 644 (594 SE2d 330) (2004) ("Appellants contend the trial court erred in granting declaratory relief to Raper because there was no controversy with regard to her rights under the consent order. We disagree. Declaratory relief was appropriate to relieve Raper of uncertainty and insecurity with regard to her property rights.").

[10] *Porter v. Houghton*, 273 Ga. 407 (542 SE2d 491) (2001).

[11] *Porter v. Houghton*, 273 Ga. at 407.

[12] *Kaylor v. Kaylor*, 236 Ga. 777 (225 SE2d 320) (1976).

(Internal Revenue Service)," which was "not a party or represented in th[e] action."[13] Since Georgia's version of the Uniform Declaratory Judgments Act[14] requires the existence of a justiciable controversy, we held that the trial court lacked jurisdiction to adjudicate the complaint and therefore vacated the declaratory judgment. By contrast, it is undisputed that there is an actual, justiciable controversy between Acevedo and Kim. The sole question is whether a declaratory judgment action is the proper procedural vehicle for resolving the dispute.

The third case we cited in our question, *Oxford Finance Cos. v. Dennis*, is distinguishable as well, because like *Kaylor v. Kaylor*, the decision turned on the absence of a justiciable controversy between the parties.[15] In any event, to the extent *Kaylor v. Kaylor* and *Oxford Finance Cos. v. Dennis* could be read to bar a declaratory judgment action to determine the amount due for past child support payments, they have been superseded by our later decision in *Weaver v. Jones*.

The argument that Acevedo could raise his claims against Kim as a defense in a contempt action if Kim ever chose to bring one misses the point, because, as a matter of law, it matters not that Acevedo could be heard in another type of action. The declaratory judgments act states plainly that "[r]elief by declaratory judgment shall be available, notwithstanding the fact that the complaining party has any other adequate legal or equitable remedy or remedies."[16] As we have explained:

> A declaratory judgment is an appropriate means of ascertaining one's rights and duties under a contract and decree of divorce. [Cit.] The wife's contention that the husband must use the modification procedures set out in Code Ann. § 30-220 is without merit. "Relief by declaratory judgment shall be available notwithstanding the fact that the complaining party has any other adequate legal or equitable remedy or remedies." Code Ann. § 110-1101 (c).[17]

It also seems unwise to create a legal rule that would require Acevedo and other non-custodial parents like him to risk the very

---

[13] *Kaylor v. Kaylor*, 236 Ga. at 778.

[14] OCGA §§ 9-4-1 to 9-4-10. See *Williams v. Kaylor*, 218 Ga. 576, 577 (129 SE2d 791) (1963) ("The declaratory judgments law, contained in the Acts of 1945 (Ga. L. 1945, p. 137) and amended by subsequent acts (Ga. L. 1959, pp. 236, 237) is the uniform declaratory judgments act adopted by most of the states of the Union.").

[15] *Oxford Finance Cos. v. Dennis*, 185 Ga. App. 177 (363 SE2d 614) (1987).

[16] OCGA § 9-4-2 (c).

[17] *Bache v. Bache*, 240 Ga. at 3.

real possibility of being publicly accused of contempt of court by the custodial parent of his children in order to obtain a binding judicial determination on whether the custodial parent is owed additional child support. It makes little sense to force parents having a disagreement over money matters to hurl public charges of contempt of court at each other, along with its attendant risk of imprisonment, in order to secure an authoritative construction of a confusing child support provision in a divorce decree.

The lesson of *Weaver v. Jones* and the other decisions cited above is that fixing the precise amount of a debt currently due under a contract or under an unclear prior judgment is a proper basis for a declaratory judgment action. The requisite "futurity" is the future payment of the amount due, if any, once fixed by the court, or, alternatively, the conclusive, legally binding determination that the creditor's claim of an unpaid debt is invalid. This principle applies regardless of whether the basis of the obligation to pay is an ordinary commercial contract, a prior judgment in a business dispute, or a final decree of divorce.[18]

Acevedo's complaint for declaratory judgment seeking a determination of the amount due for past child support payments stated a claim upon which relief could be granted. Accordingly, we affirm the trial court's judgment.

*Judgment affirmed. All the Justices concur, except Hunstein, P. J., and Benham and Hines, JJ., who dissent.*

HINES, Justice, dissenting.

I respectfully dissent because the opinion of the majority incorrectly determines the merits of the present appeal, and in so doing, undermines long-standing precedent to distort the very nature and purpose of an action for declaratory judgment.

There is little question that a declaratory judgment action can be an appropriate vehicle for ascertaining a party's rights and duties under a contract and decree of divorce. *Weaver v. Jones*, 260 Ga. 493 (1) (396 SE2d 890) (1990). But not every support dispute arising from the terms of a final judgment and decree of divorce is appropriately resolved by seeking declaratory relief under OCGA § 9-4-1. Indeed,

> [a] declaratory judgment is not the proper action to decide all justiciable controversies. To proceed under a declaratory

---

[18] See OCGA § 9-4-1 ("The purpose of this chapter [authorizing declaratory judgment actions] is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and this chapter is to be liberally construed and administered.").

judgment a party must establish that it is necessary to relieve [the party] of the risk of taking some *future* action that, without direction, would jeopardize [the party's] interests.

(Emphasis supplied.) *Porter v. Houghton*, 273 Ga. 407 (542 SE2d 491) (2001). In the present case, even assuming ambiguity or controversy in the child support increase provision necessitating its judicial construction, Acevedo's petition does not allege the uncertainty or risk of taking any present, much less future, action. Rather, it seeks a judicial pronouncement *only* of child support obligations which had already accrued. Acevedo sought construction of the child support provision in the parties' 1996 final judgment and decree of divorce solely for the purpose of "establishing the fixed amount of [his] support obligation for the last eight (8) years."

As a general matter, a prayer for relief is not deemed to constitute part of the cause of action. *Holloman v. D.R. Horton, Inc.*, 241 Ga. App. 141, 146 (3) (524 SE2d 790) (1999). However, in the case of a petition seeking declaratory judgment, the relief sought must be considered in determining the legal sufficiency of the suit. This is so because of the very nature of declaratory judgment; in a declaratory judgment petition one must ask for a declaration of rights — that is the essence of the action. This Court has recognized that the sufficiency of the allegations of a complaint ostensibly seeking declaratory judgment must be examined in light of the requested relief. See *Kirkland v. Morris*, 233 Ga. 597 (212 SE2d 781) (1975); *Gay v. Hunt*, 221 Ga. 841 (148 SE2d 310) (1966). Indeed, in *Gay v. Hunt*, it was expressly determined that the purported petition for declaratory judgment "[did] not allege a cause of action for any of the relief sought." Id. at 845 (2). And so it is in the present case. The allegations of the complaint are not sufficient for a declaratory judgment because there is no asserted necessity for a determination to guide and protect Acevedo from uncertainty and insecurity with respect to the propriety of some future act or conduct, which act or conduct, without such judicial direction might reasonably jeopardize his interests. Id. at 845 (2) (a).

It is plain that only support arrearages are at issue in this action; yet, without citing any legal authority therefor, the majority seeks to sustain the declaratory judgment by characterizing the accrued debt in futurity by virtue of the fact of the future payment of the debt. Under such reasoning, when there is a support arrearage due and owing, and even if the amount has already been determined by the trial court, an action for declaratory judgment would lie. This is not the current state of the law, nor should it be. The logical consequence of this contrived construction would be the seeking of declaratory

judgment as a defense to the payment of any found obligation or debt, thus spawning unnecessary and spurious litigation. Nor would such an approach avoid a contempt proceeding, which is another voiced concern of the majority. The facts of this case plainly demonstrate the fallacy of attempting to fit a dispute over past due support into the framework of a declaratory judgment. As already noted, plaintiff Acevedo is not at risk of taking some *future* action regarding the arrearages; he simply must pay them in order to avoid sanction. Nor is Acevedo, or any litigant for that matter, forced into a determination of his or her support obligations in the context of a contempt action. If in doubt, a party must timely seek guidance. Acevedo had eight years to ask for a judicial clarification of his support obligations, but instead, chose to default, risk contempt, and effectively attempt to mount a defense to the contempt by filing the present action for declaratory judgment. Furthermore, if Acevedo has genuine uncertainty as to his future obligations, he can certainly petition for declaratory relief regarding such obligations, but again, he has not done so in the present action.

Even more disturbing than the majority's artifice is the fact that it has wholly ignored the very hallmark of a declaratory judgment. "The distinctive characteristic of a declaratory judgment is that the declaration stands by itself and does not seek execution or performance by the defendant. Ordinary judgments, on the other hand, grant consequential or curative relief in some form." *Kirkland v. Morris*, supra at 598. This Court recently focused on this distinction in an action for declaratory judgment in a dispute regarding child support and contempt in *Gelfand v. Gelfand*, 281 Ga. 40 (635 SE2d 770) (2006). In *Gelfand,* the wife divorced the husband, and the trial court incorporated the parties' settlement agreement into the divorce decree. Approximately four years later, the wife petitioned for an upward modification of child support, and that the husband be held in contempt for making unauthorized deductions in his support and alimony payments. Thereafter, the wife amended her complaint to add a request for a judicial declaration about the meaning of purportedly ambiguous provisions in the settlement agreement. Following a hearing, the trial court entered an order finding certain of the language in the settlement agreement unambiguous and ordering the husband to provide financial information relating to the child support request; the court did not resolve the contempt or make a final determination regarding the modification request. Even though this Court initially granted a discretionary appeal to resolve whether the court's declaratory ruling was appealable as a final judgment, this Court determined that it need not address that issue because the wife's request for declaratory relief "was not truly an action for declaratory judgment." Id. Once again, this Court stressed

that the determinative characteristic of a declaratory judgment is the declaration itself and that it must "[stand] by itself" and "does not seek execution or performance by the defendant." We concluded that inasmuch as the wife sought guidance with respect to language in the settlement agreement in order to compel husband to provide her with additional funds, "her action was not truly one for declaratory judgment." Id.

The fatal infirmity of the present action as one for declaratory judgment is starkly illustrated by the fact that the trial court made no declaration whatsoever regarding the construction of the support provision, and, in fact, logically could not; it merely awarded the relief sought, that is, a monetary amount principally representing the support arrearages owed by Acevedo.

While, by its terms the declaratory judgment act, OCGA § 9-4-1 et seq., is to be given a liberal construction, today the majority applies it so broadly and indiscriminately so as to render it beyond recognition. Simply, Acevedo's purported petition for declaratory judgment failed to state a viable claim for declaratory relief. Consequently, it did not serve to invoke the superior court's initial subject matter jurisdiction over resolution of the child support arrearage dispute. Nor can the judgment of the superior court be sustained as the resolution of Kim's counterclaim. A defendant cannot obtain affirmative relief by way of a counterclaim in an otherwise non-viable declaratory judgment action. *Allstate Ins. Co. v. Talbot*, 198 Ga. App. 190 (1) (400 SE2d 694) (1990).

While by its ruling, the trial court may have been attempting to take a just and expeditious route by granting to Kim the needed support for her children in this action rather than awaiting the adjudication of the contempt action against Acevedo, it could not ignore the law to do so; this Court should not follow suit. I fear that today's holding by the majority illustrates the adage, "bad facts make bad law." Calculation of the money past due and owed by Acevedo for the support of his children, which is the only issue in this action and the only ruling made by the trial court, does not invoke declaratory relief. Perceived justice for the litigants should not be obtained at the cost of injustice to the law.

I am authorized to state that Presiding Justice Hunstein and Justice Benham join in this dissent.

DECIDED NOVEMBER 3, 2008 —
RECONSIDERATION DENIED NOVEMBER 17, 2008.

*John W. Roper*, for appellant.

*Leslie L. Cohn*, for appellee.