**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 28, 2013**

# In the Court of Appeals of Georgia

A13A0224. HARRIS v. HOLDER CONSTRUCTION COMPANY
  et al.

ANDREWS, Presiding Judge.

Nikki Harris appeals after the trial court granted summary judgment to Holder Construction Company and Premier Contract Carpets on Harris's claims of negligence after she fell while walking across a carpet that was covering a hole in the sub-flooring of the building where she worked. After reviewing the record, we conclude that there was no error and affirm.

Summary judgment is proper when the court, "viewing all the facts and reasonable inferences from those facts in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to each essential element of the case." *Lau's Corp. v. Haskins,* 261 Ga. 491, 495 (405 SE2d 474)

(1991). "On appeal from the grant of summary judgment[,] this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citations and punctuation omitted.) *Campbell v. Landings Assn.,* 289 Ga. 617, 618 (713 SE2d 860) (2011). "[A] defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case." *Cowart v. Widener,* 287 Ga. 622, 623 (697 SE2d 779) (2010).

The record shows that Holder was the general contractor for a renovation project in the Richard B. Russell Federal Building. Premier Carpet was the carpet subcontractor and it contracted with Rosser Floor Covering to install the carpet after the renovation of the flooring was completed.

Harris worked on the sixteenth floor of the building and, approximately three months after the renovation was finished, was walking to a co-worker's cubicle when her heel went down into a depression in the carpet, causing her to fall against the file cabinets and tear the meniscus in her knee.

After the carpet was removed, inspection revealed a "Walker" duct approximately two and a quarter inches in diameter that was not covered with a steel plate. The duct was filled to within an inch and a quarter of the top with fiberglass insulation debris and broken concrete. Abercrombie, the superintendent for Holder Construction, explained that a Walker duct was a type of electrical floor outlet from the time when the electrical wires ran through "floor troughs." These electrical wires were abandoned and a new electrical system was installed during the renovation. The wires were left in the trough and the Walker ducts were covered with metal plates.

Abercrombie testified at his deposition that he walked the floors before the carpet was installed, looking for cracks or anything that was not level. He stated that, had the exposed duct existed at that time, Holder would have put a metal plate over it, anchored it, put a cement self-leveling material around it, and then smoothed it out.

Likewise, Andrew Rosser, who laid the carpet, stated that the concrete floor was swept clean before the carpet was installed. He testified that there were some "nicks" that had to be filled in to make the floor smooth, but he did not see any holes or any area of "weakness." If he had seen any holes he would have taken care of them himself or told someone else to take care of it before he laid the carpet.

3

Holder and Premier filed a motion for summary judgment contending that there was no evidence that either of them had actual or constructive knowledge of the defect, and there was no evidence that they had breached any standard of care. They argued that the evidence was consistent with a Walker duct that had been covered previously with cement flooring material and it was this concrete that collapsed into the hole, thus creating the indentation in the carpet that caused Harris's fall.

The trial court agreed, pointing to the undisputed testimony of both Abercrombie and Rosser that there was no hole present when the carpet was laid down. Further, the testimony was undisputed that there was nothing on the surface of the concrete that gave any indication that the hole was under there. The order stated that Harris[1] had come forward with no evidence to the contrary and, in order to avoid summary judgment, she must point to evidence showing that Holder and Premier had constructive knowledge of the defect; in other words, that they should have known it was there. The trial court held that Harris had not come forward with any evidence, expert or otherwise, that the contractor or carpet layer should have discovered the latent defect.

---

[1] Apparently Harris's name changed to Woods at some point during the litigation and the trial court uses that name in its order.

1. Harris now appeals, arguing that the trial court erred in holding that, without expert testimony, there is no evidence in the record to contradict Holder's and Premier's argument that they did not deviate from the applicable standard of care in performing the work and inspections. Harris continues to claim that the hole was there when the carpet was laid and, "[p]ut simply, they just missed seeing the open Walker duct before they laid the carpet."

As the trial court pointed out, Harris did not show that Holder's work was the first renovation of the area where she fell, or that the hole in question had not been patched previously at some point prior to the 2007 renovation. Accordingly, the trial court held that Harris must come forward with some evidence to show that defendants failed to exercise the degree of care and skill necessary to locate the improperly patched hole. She did not do so. Harris's only evidence was that she fell and, when the carpet was pulled up, there was an open Walker duct filled with insulation debris and loose concrete. Harris relies on the inference that because the hole was there when she fell, it must have been there when the carpet was laid.

> When a party is relying on inferences from circumstantial evidence to prove a point, not only must those inferences tend in some proximate degree to establish the conclusion sought, but they must also render less probable all inconsistent conclusions. In cases of circumstantial

5

evidence a mere inconclusive inference, or, as the English courts express it, a mere scintilla, is not to be regarded as any evidence, so as to require the submission of its sufficiency to the jury. *Allen Kane's Major Dodge, Inc. v. Barnes,* 243 Ga. 776, 781 (257 SE2d 186) (1979). If the circumstantial evidence raises only a mere conjecture as to the conclusion sought, there can be no recovery. *Dawkins v. Doe,* 263 Ga. App. 737, 740 (589 SE2d 303) (2003).

*Ken Thomas of Ga., Inc. v. Halim*, 266 Ga. App. 570, 574 (597 SE2d 615) (2004).

The inference that Harris urges, that there was an open hole that neither Holder nor Rosser saw before the carpet was laid is purely speculative and not supported by any evidence. It is difficult to imagine that a hole that size in an otherwise smooth expanse of concrete floor would not have been noticed. Moreover, defendants's contention that the hole was covered before the carpet was laid is further supported by the additional evidence that this duct was in a walkway that was in use for some months before Harris's fall and no one noticed any indentation in the carpet.

Because Harris has submitted no evidence that the job was not performed properly and no evidence that Holder or Premier should have or could have discovered any latent defect under the concrete, the trial court's grant of summary judgment on these grounds was not error.

6

2. Harris also argues that the trial court erred in granting summary judgment because the only evidence in support of the motion was the testimony of Holder's project superintendent Abercrombie, which was "vague, evasive, equivocal, and contradictory" as to whether Holder and Premier Carpets left the Walker duct uncovered. We disagree.

The pertinent parts of Abercrombie's testimony were not in any way contradictory. Although he refused to speculate as to how or when the hole became a hazard, he was extremely consistent in his insistence that the hole was not there before the carpet was laid. He also stated unequivocally that when his company repaired that type of hole, they covered it with a metal plate and then applied a leveling material. This testimony never varied.

Further, contrary to Harris's contention, Abercrombie's testimony was not the only basis for the grant of summary judgment. Andrew Rosser, who laid the carpet, confirmed that there was no visible defect in the concrete flooring when he put the carpet down. There is no argument that his testimony was evasive or contradictory. Accordingly, this enumeration of error is without merit.

*Judgment affirmed. Dillard and McMillian, JJ., concur.*