**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 8, 2019**

# In the Court of Appeals of Georgia

A19A1472. DILLARD v. SCHILKE.

HODGES, Judge.

Following the death of Willie Dillard ("Willie"), both parties to this appeal, Veleria Dillard ("Veleria") and Bridgitte Schilke (a/k/a Bridgitte Dillard) ("Bridgitte"), claimed to be his legal surviving spouse. It is undisputed that Veleria was Willie's first wife, and she petitioned to be declared Willie's lawful wife at the time of his death and for Willie's subsequent marriage to Bridgitte to be declared invalid. Bridgitte counterclaimed for a declaratory judgment recognizing her as Willie's lawful surviving spouse. The trial court denied Veleria's motion for summary judgment on her petition, and a jury determined that Bridgitte was Willie's surviving spouse. Veleria now appeals, contending that (1) the trial court erred in denying her motion for summary judgment; (2) the jury's verdict is against the preponderance of

the evidence; and (3) the jury's verdict is not supported by the evidence. For the reasons that follow, we find the evidence sufficient to support the jury's verdict and affirm.

"There is a presumption in favor of the validity of verdicts. And after rendition of a verdict, all the evidence and every presumption and inference arising therefrom, must be construed most favorably towards upholding the verdict." (Citation and punctuation omitted.) *Nationwide Mut. Fire Ins. Co. v. Wiley*, 220 Ga. App. 442, 443 (2) (469 SE2d 302) (1996).

So viewed, the evidence shows that Willie and Veleria married on December 25, 1969 in Mississippi and had two children. In 1976, Willie left the marital home. Around June of 1979, Veleria was served with divorce papers and purportedly told that if she did nothing, she would be divorced in 10 days. In 1980, Willie submitted a sworn statement to the United States Army wherein he attested that he petitioned for a dissolution of his marriage to Veleria in August 1979 and was at that time legally separated from her.

In 1981, believing herself to be divorced from Willie, Veleria married a man named Herman Brown. Veleria's marriage license indicates that she was divorced from Willie in December 1979. In either 1983 or 1984, however, Veleria separated

2

from Brown. She contends she did so because she learned she was not legally divorced from Willie, and that she never again lived with Brown as her husband. Despite now claiming that she knew in the early 1980's that she was not divorced from Willie, Veleria took no action to legally divorce him, although she claims that she told him that they were still married.

Willie, however, subsequently remarried. While stationed with the Army in Germany, Willie met Bridgitte and moved in with her and her two children in 1982. Once Willie proposed, he called Veleria to get his birth certificate so he could marry Bridgitte. Willie and Bridgitte married in September 1986 in Denmark. Bridgitte does not know what documentation Willie provided Danish authorities, but she was required to provide her divorce decree from her prior marriage.

After Willie and Bridgitte were married, Willie was required to submit documentation to the Army so that she and her children could obtain military identification cards and so that her children could attend an American high school. Again, Bridgitte does not know what documentation Willie was required to provide, but she was required to produce her divorce decree. In addition, Willie petitioned for Bridgitte and her children to obtain green cards and, ultimately, all of them moved to Hinesville, Georgia after Willie's station with the Army changed in 1988. From 1993

3

to 1995, Willie was stationed in Germany again, where he lived with Bridgitte and her children until his retirement and move back to Georgia.

From the time they were married until his death, Willie, Bridgitte, and her children lived like a typical family, and Bridgitte's children considered Willie their father. In addition, Willie and Bridgitte filed joint taxes as a married couple, and Willie named Bridgitte as his retirement account beneficiary, identifying her as his wife. Willie also petitioned to renew Bridgitte's green card every 10 years. And, for a period of time, Willie's son with Veleria lived with Willie and Bridgitte, and the two women spoke about this arrangement.

In 2011, Bridgitte learned that Willie had end-stage liver cancer. He was hospitalized for three weeks, and Bridgitte stayed by his side during this time. Veleria knew of Willie's illness, but she did not visit him in the hospital. Willie was discharged from the hospital and nurses came to his house to care from him, and, still, Veleria did not contact Bridgitte. On February 13, 2012, Willie died. Bridgitte made Willie's funeral arrangements and her daughter paid for the funeral with no involvement from Veleria.

After Willie's death, Veleria divorced her second husband on the grounds of "unintended bigamy." Bridgitte did not know until after Willie's death that Veleria

claimed to still be married to him. No divorce certificate dissolving the marriage of Veleria and Willie has been located despite Veleria's search of records in some, but not all, of the places in and around where Willie lived due to his various Army relocations.

Both Veleria and Bridgitte began petitioning for various benefits after Willie's death, including social security, life insurance, federal pension, and federal death benefits. Veleria was awarded Willie's social security benefits, but Bridgitte, who still lived in Georgia, was not notified of the hearing in Mississippi which resulted in that adjudication. Veleria was also awarded the proceeds of one of Willie's life insurance policies. On the other hand, Bridgitte, who was Willie's primary beneficiary in his will and named therein as his "wife," was permitted to probate the will and was appointed by the court as the estate's administrator. In addition, although Bridgitte initially received Willie's retirement benefits, the benefits were suspended because of the dispute with Veleria, and Bridgitte lost the home she shared with Willie to foreclosure.

Both Veleria and Bridgitte sought respective declarations from the trial court that she was the legal surviving spouse of Willie. Veleria moved for summary judgment on her petition, which the trial court denied after finding that factual

disputes existed as to who was Willie's widow. The case proceeded to a jury trial, where Veleria, Bridgitte, and Bridgette's daughter testified. The jury returned a verdict finding Bridgitte to be Willie's surviving spouse and awarding her $5,000 in attorney fees. Veleria now appeals.

We first note that Veleria's appellate brief fails to comply with numerous Court of Appeals rules, making resolution of her arguments difficult. First, in violation of Court Rule 25 (a), her brief contains virtually no citations to the record. "It is not the function of this Court to cull the record on behalf of a party in search of instances of error. The burden is upon the party alleging error to show it affirmatively in the record." (Citation and punctuation omitted.) *Guilford v. Marriott Intl.*, 296 Ga. App. 503, 504 (675 SE2d 247) (2009).

In addition,

we point out that [Veleria's] appellate brief is not in compliance with Court of Appeals Rule 25(c) (1), . . . Although [Veleria's] brief enumerates several separate errors, [her] brief does not contain separate argument sections for each enumeration and follows no particular order in its presentation. As we have held, Rule 25 (c) (1) is more than a mere formality. It is a requirement which this Court imposes to ensure that all enumerations of error are addressed and to facilitate review of each enumeration. By failing to comply with the rule, [Veleria] has hindered the Court's review of [her] assertions and has risked the possibility that

6

certain enumerations will not be addressed. Accordingly, to the extent that we are able to discern which of the enumerations are supported in the brief by citation of authority or argument, we will address those enumerations. (Citation omitted.) *Barnett v. Fullard*, 306 Ga. App. 148, 149-150 (1) (701 SE2d 608) (2010); see Court of Appeals Rule 25 (c) (1) ("The sequence of arguments in the briefs shall follow the order of the enumeration of errors, and shall be numbered accordingly").

1. Veleria first contends that the trial court erred in denying her motion for summary judgment. This enumeration presents nothing for us to review.

Georgia law is clear that "an appellate court does not review the denial of summary judgment once a case is tried. Instead, the appellate court reviews the sufficiency of the evidence in the light most favorable to the jury's verdict." (Citation omitted.) *Cawley v. Bennett*, 293 Ga. App. 46, 47 (1) (666 SE2d 438) (2008); see also *Velasco v. Chambless*, 295 Ga. App. 376, 377-378 (2) (671 SE2d 870) (2008) ("[D]enial of a motion for summary judgment is rendered moot by the court's entry of judgment on the verdict.") (citation and punctuation omitted.). Consequently, the denial of Veleria's motion for summary judgment presents nothing for our review.

2. In two related enumerations of error, Veleria contends that the jury's verdict is against the preponderance of the evidence and is not supported by the evidence. We disagree.

Under Georgia law, to be able to enter into a marriage, a person must "[h]ave no living spouse of a previous undissolved marriage. The dissolution of a previous marriage in divorce proceedings must be affirmatively established and will not be presumed." OCGA § 19-3-2 (a) (3).

> Where a party to a ceremonial marriage has been previously married and the validity of the second marriage is challenged, a presumption arises that the second marriage is valid until evidence is adduced that the spouse of the first marriage is living, and only then does the [law] place the burden on the party contending that the second marriage is valid to go forward with the evidence and show that the first marriage was dissolved by divorce.

(Citation and punctuation omitted.) *Glover v. Glover*, 172 Ga. App. 278, 279 (1) (322 SE2d 755) (1984).

Here, it is undisputed that Veleria and Willie were married in 1969 and that she is still alive. Accordingly, it was Bridgitte's burden to establish by the evidence that Willie and Veleria were legally divorced. See *Glover*, supra, 172 Ga. App. 279 (1). Veleria's argument that Bridgitte has not met her burden is premised on an assumption that Bridgitte can only prevail if she produces a copy of the divorce decree between Veleria and Willie. While the divorce decree would be direct evidence of the dissolution of the marriage, any fact can be proven through

8

circumstantial evidence. See, e. g., *Southern Exposition Mgmt. Co. v. Genmar Indus.*, 250 Ga. App. 702, 704 (551 SE2d 830) (2001) ("A claim of agency may be proved, as any other fact, by circumstantial evidence."); *Kapsch v. Stowers*, 209 Ga. App. 767, 769 (1) (434 SE2d 539) (1993) ("Negligence, like any other fact, may be proved by circumstantial evidence as well as by direct testimony.") (citation and punctuation omitted); *Rollins v. Great Southwest Fire Ins. Co.*, 162 Ga. App. 139, 140 (1) (290 SE2d 353) (1982) ("Although the evidence . . . was circumstantial, such evidence can be used to prove any fact.").

The standard for relying on circumstantial evidence is well settled:

When a party is relying on inferences from circumstantial evidence to prove a point, not only must those inferences tend in some proximate degree to establish the conclusion sought, but they must also render less probable all inconsistent conclusions.

(Citation omitted.) *Harris v. Holder Constr. Co.*, 322 Ga. App. 503, 505 (1) (745 SE2d 744) (2013). Stated differently,

Where a plaintiff in a civil case supports [her] case solely by circumstantial evidence, before [she] is authorized to have a verdict in [her] favor the testimony must be such as to reasonably establish the theory relied on. There must be more than a 'scintilla' of circumstances to carry the case to the jury. It is for the court to say whether the

9

circumstances reasonably establish the hypothesis relied on by the plaintiff. If the evidence meets this test, it is then for the jury to say, either that the plaintiff has not carried [her] burden of proof because the evidence equally supports [her] hypothesis and some other reasonable hypothesis, or that the plaintiff has carried [her] burden of proof in that the evidence preponderates to [her] hypothesis as against all other reasonable but less probable hypotheses.

*Southeastern Fidelity Ins. Co. v. Stevens*, 142 Ga. App. 562, 564-565 (2) (236 SE2d 550) (1977).

With these principles in mind, reviewing the evidence in the light most favorable to upholding the verdict in this case, we find that the jury was authorized to conclude that (1) the circumstantial evidence established that Willie and Veleria legally divorced and (2) that Willie's marriage to Bridgitte was valid. Bridgitte did not just rely on her own subjective beliefs or those of Willie and Veleria as to the legality of the divorce.[1] Rather, in support of her position, Bridgitte demonstrated that

---

[1] Ample evidence was presented that both Willie and Veleria subjectively believed themselves to be divorced, including Willie's sworn statement to the Army, the re-marriage of both parties, and Valeria's inaction in pursuing a divorce despite purportedly believing she was still married to Willie decades after they separated. However, the parties' subjective beliefs as to the status of Willie and Veleria's marriage are legally irrelevant. See *Clark v. Cassidy*, 62 Ga. 407, 412 (5) (1879) ("Nor does it matter that the innocent party to the second marriage was ignorant of the first; the second is void if either was married to another when the second was

10

the Danish government, the United States Army, and United States immigration officials were all satisfied that Willie and Bridgitte could and did legally marry. While Bridgitte was unsure what documentation Willie provided these officials, she testified that she was required to provide them with proof of her prior divorce. Because these governmental entities recognized Willie and Bridgitte's marriage, the jury was authorized to find that Bridgitte carried her burden of proof "in that the evidence preponderates to [her] hypothesis as against all other reasonable but less probable hypotheses." See *Stevens*, supra, 142 Ga. App. at 565 (2).[2] Moreover, a jury was not required to find in Veleria's favor simply because a divorce decree had not been located, especially given the number of jurisdictions where such a decree could have been filed due to Willie's multiple Army relocations.

---

contracted, so far as the parties themselves are concerned."); see also *Clarke v. Clarke*, 188 Ga. App. 198 (372 SE2d 475) (1988) (where decedent's first marriage was not dissolved, decedent's second wife was not permitted to administer his estate even though she believed herself to be married to him and bore his children).

[2] This case is factually distinguishable from *Glover*, 172 Ga. App. at 279 (1), relied upon by Veleria. A review of *Glover* indicates that the second spouse introduced no evidence to meet her burden to establish the dissolution of the decedent's first marriage by divorce.

The circumstantial evidence in this case was sufficient for a rational trier of fact to find that Willie and Veleria had divorced prior to Willie's marriage to Bridgitte. Accordingly, the evidence supported the jury's verdict that Bridgitte was Willie's lawful surviving spouse.

*Judgment affirmed. Dillard, P. J., and Gobeil, J., concur.*