302 Ga. 297
FINAL COPY

S17A1064.  SHELLEY v. TOWN OF TYRONE.

NAHMIAS, Justice.

This case arises from a long-running battle that appellant Richard Shelley has been waging against the Town of Tyrone's zoning ordinances.  Because Shelley failed to exhaust his administrative remedies before seeking relief in the trial court, his as-applied challenges to the zoning ordinances are not ripe for judicial review.  We therefore affirm the superior court's order granting Tyrone partial summary judgment on those claims.  And because the town has enacted a new zoning ordinance, Shelley's facial challenges to the previous ordinances are moot.  We therefore vacate the superior court's order addressing the merits of those claims and remand the case with direction to dismiss those claims unless Shelley properly amends his complaint to challenge the ordinance now in effect.

1.    Viewing the evidence in the light most favorable to Shelley as the

party opposing summary judgment, see Cowart v. Widener, 287 Ga. 622, 624 (697 SE2d 779) (2010), the record shows the following. In 1999, Shelley purchased commercial property with four rental units on Senoia Road in Tyrone.[1] In 2003, he purchased another commercial property in Tyrone, this one with eight rental units and located on Palmetto Road. Both properties include industrial-type buildings with high ceilings, limited parking, limited storefront, and truck docks. At the time of each purchase, the properties were zoned C-2 commercial district, but according to Shelley the properties had preexisting tenants with grandfathered nonconforming uses, meaning the right to use the properties in those ways was allegedly vested at the time Tyrone adopted zoning restrictions removing them as permitted or conditional uses.

C-2 was the middle commercial zoning designation. It replaced C-H (commercial highway district) in 1989 but kept the same primary uses. A new zoning ordinance was passed in 1997; it is unclear if that ordinance made any changes to C-2. The tenants when Shelley bought the properties included an automobile repair and sales shop, a landscaper, and a furniture upholsterer. It

[1] Shelley sold this property in May 2014 but still seeks damages based on its allegedly depressed sale price and reduced rents during the period he owned it.

appears that at least these three were permitted uses under C-2 at the time of Shelley's purchases.

In 2004, Tyrone amended its zoning ordinance and eliminated some of the permitted uses under C-2. The deleted uses included some that Shelley had on his property at least at some point, including major automobile repair, automobile dealer, landscaping, and furniture upholstery. Shelley sent several letters to Tyrone alleging that this amendment deprived him of all economically feasible uses of his properties and requesting that the town either restore a number of uses that had been deleted or pay him almost $2 million to make up for lost rents. The town council denied Shelley's requests.

In 2007, Shelley, representing himself, sued Tyrone in superior court, arguing that the 2004 zoning amendment violated his federal and state due process rights because it eliminated all economically feasible uses of his property and because it was passed without proper notice or investigation. He asked for, among other things, a declaratory judgment that the town's 1989 zoning ordinance was controlling and the 1997 ordinance and 2004 amendment were invalid; injunctive relief preventing the town from refusing to issue legal business use licenses to him; and damages for inverse condemnation. Tyrone

removed the case to federal district court on the ground that it involved a federal question.

On April 6, 2009, the federal court issued an order that summarized the history of the enactment of Tyrone's zoning ordinances and found that the 1997 ordinance was the controlling zoning ordinance for Shelley's case and that Tyrone validly amended that ordinance in 2004. The court then explained that to do business in Tyrone, entities must submit an application for and obtain an Occupation Tax Certificate (OTC). The court held that Shelley's as-applied constitutional challenges to the 2004 amendment were not ripe because he had not applied for an OTC or obtained any final decision from the zoning authority depriving him of a tenant or hindering an existing tenant based on the 2004 amendment. The federal court further held that to the extent Shelley was raising a takings claim, he would have to raise that in state court. The court dismissed these as-applied claims without prejudice.

The federal court then held that Shelley's facial challenge to the 2004 ordinance amendment on federal due process grounds was ripe but failed because property owners generally do not have due process claims for legislative decisions like that one and to the extent Shelley was entitled to some

4

level of due process, the town council complied with Tyrone's local notice and hearing requirements. Thus, the court dismissed that claim with prejudice and granted Tyrone's motion for partial summary judgment. The federal court declined to exercise supplemental jurisdiction over the remaining state-law claims and closed the case.

Shelley then hired two attorneys, who reopened the case so the state-law claims could be remanded to the superior court. Following some negotiations, Tyrone's attorney sent a letter to Shelley's attorneys on May 3, 2010, advising that Shelley's "petition for recognition of rights to nonconforming uses and vested rights" was not something that the town could grant. The town attorney noted that he was not aware of any decisions made by Tyrone that failed to recognize any of Shelley's nonconforming uses or vested rights. He promised that the town would not "make any decision which would impact the vested rights of [Shelley], if any" and added, "the Town stands ready to issue appropriate permits to [Shelley] for which he is qualified." On October 21, 2010, the parties filed a mutual dismissal with prejudice of all of Shelley's

remaining claims.[2]

About a year later, in October 2011, Tyrone held two public hearings to discuss proposed Ordinance 2011-13. This ordinance was intended to streamline the 1997 zoning ordinance and consolidate the zoning designations; the town council thought the town was too small for the number of different designations it had. As relevant for Shelley's properties, which had been designated C-2, the 2011 ordinance merged the three commercial designations into two: C-1 (downtown commercial) and C-2 (highway commercial). The ordinance incorporated all of the permitted and conditional uses of the former C-2 into C-1, redesignated all property that was C-2 as C-1, and redesignated all property that was C-3 as C-2. Thus, under Ordinance 2011-13, Shelley's properties would be zoned C-1.[3] The proposed ordinance also allowed legal

---

[2] In 2013, Shelley sued his attorneys for malpractice, claiming that he had fired them before they signed the dismissal and therefore they acted without authority. The court in that case did not decide that question because it found that, even if the attorneys acted without authority, they caused Shelley no harm, because his due process claim had not been viable since the requisite public notice had been published and a hearing held before the 2004 zoning amendment was adopted, there was no evidence that Tyrone's decision had deprived Shelley of any tenants, and Shelley failed to give timely ante litem notice.

[3] Shelley seems to allege that some uses found in former C-2 were not carried over into new C-1, but he does not identify specific examples. It appears that his issue is really the uses eliminated earlier by the 2004 zoning amendment. The new C-1 designation had a list of over 100 permitted uses and a dozen or so conditional uses. The town had no discretion in allowing conditional uses; a property owner was allowed a conditional use as long as certain conditions were met.

nonconforming uses to preserve vested rights but said that if a nonconforming use of a property was discontinued and that nonconforming use was not resumed within six months, the property would lose permission for the nonconforming use.

Shelley attended both October 2011 meetings and personally objected to Ordinance 2011-13 as unconstitutionally restricting his property use. Shelley's attorney also spoke at the first meeting, held on October 6, asserting that it would cost Shelley one to two million dollars to change his buildings to fit the new zoning restrictions. The town attorney asked everyone at the meeting, and Shelley specifically, to name any uses they believed had been covered under the old zoning ordinance but would not be covered under the new one. The ordinance was then tabled until the second meeting, which was held two weeks later. At that meeting, Shelley said that the automobile brokers use had been eliminated in the C-1/C-2 merger. The town council agreed and revised the new ordinance to add it as a conditional use in C-1. Shelley also suggested that the time to preserve a nonconforming use be increased from six months to one year, which the council did. The town council then passed Ordinance 2011-13 with

7

those two amendments.[4]

On March 28, 2013, Shelley learned that the Tyrone planning commission and zoning administrator had informed a prospective tenant that furniture assembly would not be allowed on Shelley's property because it was not permitted under C-1 zoning and the planning commission "saw no reason to add such a use to the C-1 Zoning District."[5] The furniture assembler therefore rented elsewhere. On September 18, 2013, another prospective tenant decided not to rent from Shelley after she was told by the town clerk and zoning administrator that her plan for a beauty parlor would not be allowed on Shelley's property because the property already had one beauty parlor, and two would overtax the septic system. On September 27, 2013, Shelley sent a letter to Tyrone indicating that he planned to file a lawsuit for inverse condemnation

---

[4] Shelley asserts that the council did not have the final text of the ordinance before it at the time of this vote and that the text of the ordinance had not been made available to the public. There does appear to be some confusion about what was available to the council and the public at the time, and, based on the record, it is unclear what the final version of Ordinance 2011-13 actually was. The record includes drafts of the ordinance and at least one version with revisions made after the vote. Affidavits from the town attorney and a member of the town council say that the only changes made between the ordinance they were considering, which was published for the public on Tyrone's website, and the ordinance that was passed were the additions of these two suggestions by Shelley.

[5] On October 25, 2013, the town attorney, writing on behalf of the town planning commission and zoning administrator, told Shelley that furniture assembly was not permitted under C-1 and was not a grandfathered legal nonconforming use because to his knowledge, there was no furniture assembly taking place on Shelley's property.

8

based on the loss of rent from these two potential tenants, claiming he suffered $36,900 in lost rent due to the town's "illegal denials of permitted land uses in the C-1 District." He also alleged that Tyrone had reneged on the agreement made in the 2010 letter to his attorneys that the town would not do anything to impact his vested rights.

On March 28, 2014, Shelley filed the lawsuit at issue in this appeal in superior court, asking for a declaratory judgment that the permitted uses of his properties are the same as those permitted in 1977. He alleged that Tyrone's 1977 zoning ordinance governed his properties because that was the ordinance in place when the buildings on his properties were constructed, and thus all uses available then but not now should be grandfathered, nonconforming uses. Shelley also asked for a preliminary and permanent injunction prohibiting Tyrone from denying him any of these uses. He alleged generally that all zoning ordinances passed since 1977 are facially void "because of the[ir] defective adoption and content" and more specifically that Ordinance 2011-13 was void because it was adopted without compliance with Georgia's Zoning Procedures Law (ZPL), see OCGA §§ 36-66-1 to 36-66-6, or the zoning procedures codified in Tyrone's ordinances. Shelley also alleged that Ordinance 2011-13

9

as well as the 2004 amendment to the 1997 zoning ordinance dramatically limited the uses of his properties, while not promoting the welfare of the town. Finally, he asked for attorney fees and expenses of litigation.

Shelley later amended his complaint twice, adding an inverse condemnation claim, which alleges that he "has not been paid adequate compensation for the Town of Tyrone's limitations of uses on [his properties]" and requesting damages. In April 2015, Shelley moved for summary judgment on his facial challenges, and in June, Tyrone moved for summary judgment on those challenges as well as the claims regarding the application of the zoning ordinances to Shelley's properties.

On October 1, 2015, Tyrone enacted a completely new zoning ordinance and zoning map with Ordinance 2015-07. The zoning map was attached to the new ordinance and handed out to the public for its consideration at the advertised public hearing on the ordinance. Based on this development, Tyrone filed a suggestion of partial mootness of this case on November 6, 2015, attaching a certified copy of the new zoning ordinance. Shelley responded, arguing that none of his claims are moot.

On June 26, 2016, the superior court denied Shelley's motion for summary

10

judgment and granted Tyrone's motion. The court concluded that Shelley's inverse condemnation claim was barred by his failure to provide ante litem notice to the town and noted that Shelley had failed to prove any violation of his vested rights. The court also held that although the only zoning map Tyrone had produced was dated well after the adoption of the 1997 zoning map, which was the map Ordinance 2011-13 amended, there was in fact an official map in 1997.[6] The court said that there is no precedent requiring a zoning map to be amended at the same time as the zoning ordinance text. The court next concluded that Tyrone did not violate the ZPL when enacting Ordinance 2011-13 and that the town was not required to follow the town-created procedures because they were preempted by the ZPL. Finally, the court held that any challenges to ordinances before Ordinance 2011-13 were barred by res judicata and collateral estoppel based on the dismissed 2007 case. The superior court's order did not address the mootness issue.[7]

---

[6] The superior court's statement that the 1997 map was deemed valid by Georgia's Court of Appeals was a scrivener's error; as made clear by the associated footnote in its order, the superior court meant to refer to the federal district court.

[7] The grant of summary judgment to Tyrone was only partial because it appears that the issues of the injunction and the attorney fees Shelley is seeking have not yet been decided. On June 30, 2016, Tyrone filed a motion in the superior court for final judgment on those issues. The court had not ruled on this motion before Shelley filed his notice of appeal on July 22, 2016, but those

Shelley then filed both a notice of appeal to and an application for discretionary appeal in this Court. On August 12, 2016, we dismissed Shelley's application on the ground that he was entitled to a direct appeal.[8]

2. Shelley's declaratory judgment and inverse condemnation claims — his as-applied challenges to Tyrone's zoning scheme — fail because he did not properly seek relief from the town council or other appropriate town zoning authority before filing this lawsuit in court. Although Shelley opposed Ordinance 2011-13 before its enactment, once the ordinance passed, he never sought permission through the town's established zoning processes to use his properties for any of the uses that he now claims were improperly taken away by the 2011 ordinance.[9]

This Court has explained that "[w]here the basis of the claim arises from its effect upon a particular parcel of land because of features unique to that

pending matters did not prevent Shelley's immediate appeal of the order granting partial summary judgment. See OCGA § 9-11-56 (h).

[8] In footnote 13 below, we discuss in greater detail why Shelley was not required to file a discretionary application.

[9] As discussed further in Division 3 below, Ordinance 2015-07 is the zoning ordinance now in effect in Tyrone. Shelley has not amended his complaint to extend his as-applied claims to address that new ordinance, nor does the record show that he has petitioned for any kind of relief from the new ordinance.

12

property, the owner may not bring an action for declaratory judgment without first having exhausted the administrative remedies provided by law." O S Advertising Co. of Georgia, Inc. v. Rubin, 263 Ga. 761, 762 (438 SE2d 907) (1994), overruled on other grounds by Ashkouti v. City of Suwanee, 271 Ga. 154 (516 SE2d 785) (1999). See also Little v. City of Lawrenceville, 272 Ga. 340, 342 (528 SE2d 515) (2000) (explaining that Little was required to exhaust his available administrative remedies "with regard to the issue of whether the activities conducted on the property violated the zoning ordinance even after the rezoning"). Furthermore, Shelley's as-applied claim is essentially that

> the rezoning of [his] property effectively resulted in the taking of the property under the eminent domain concept of inverse condemnation, thereby entitling [him] to compensation. Even assuming that inverse condemnation is an available remedy in this type of rezoning case, that does not end the inquiry.

Mayor & Aldermen of City of Savannah v. Savannah Cigarette & Amusement Svcs., Inc., 267 Ga. 173, 174 (476 SE2d 581) (1996) (citations and footnote omitted). As a general rule, before seeking a judicial determination that a local regulation has unconstitutionally taken property,

> a party must first apply to local authorities for relief. Requiring exhaustion of administrative remedies "prevents unnecessary judicial intervention into local affairs and promotes judicial

13

economy because local authorities, unlike the court, have the power to grant the zoning relief sought."

City of Suwanee v. Settles Bridge Farm, LLC, 292 Ga. 434, 437 (738 SE2d 597) (2013) (citations and punctuation omitted). See also Village Centers, Inc. v. DeKalb County, 248 Ga. 177, 178-179 (281 SE2d 522) (1981).[10]

Shelley contends that it would be too cumbersome for him to seek permission for a certain use not authorized by the zoning ordinance every time he rented to a new tenant who desired such a use. But seeking that kind of permission from the local government through established channels, like variance or conditional use requests or rezoning petitions, is exactly what is required. See Settles Bridge Farm, 292 Ga. at 438 (petitioner must apply for a special use permit); Savannah Cigarette, 267 Ga. at 174 (petitioner must seek rezoning).

The obligation to exhaust available administrative remedies before going to court may be excused if "the litigant establishes that submitting to the

---

[10] The exhaustion requirement applies both to claims requesting compensation for an alleged taking of particular property, see Settles Bridge Farm, 292 Ga. at 437, and for claims requesting that the ordinance be struck down as unconstitutional as applied to the property at issue, see Village Centers, 248 Ga. at 178-179. Shelley's taking allegations focus mostly on a request for compensation, but to the extent he argues that the zoning ordinances should be declared void because they deprive his properties of their value or take away his vested rights, the exhaustion requirement is the same, and Shelley has failed to meet it.

14

administrative process would be 'futile.'" <u>Settles Bridge Farm</u>, 292 Ga. at 437.

Shelley asserts, but has not demonstrated, such futility. He specifically complains about only two denials of potential tenants' planned uses. Both tenants were advised informally that their planned uses of Shelley's rental properties would not be allowed. As to the furniture assembler, the proposed tenant and Shelley were told by the planning commission and zoning administrator that furniture assembly was not a permitted use under C-1 or a grandfathered nonconforming use and that the planning commission saw no need to add this use to the C-1 zoning designation. The town council, however, not the planning commission, was the body authorized to make a final decision on rezoning, and Shelley did not formally ask the council to add that use to C-1 or to rezone the property in question. In fact, Shelley and the tenant did not formally apply for any kind of zoning relief, such as a conditional use permit, a variance, or a rezoning.[11] As for the proposed beauty parlor, that use was informally rejected by the zoning administrator and town clerk based not on the

_____

[11]  Under Ordinance 2011-13, conditional use permits were issued by the zoning administrator, variance requests were approved by the mayor and town council, and rezoning applications were ultimately approved by the town council (after a recommendation from the planning commission).

zoning ordinance but on county and state rules about sewage systems.

To the extent Shelley contends, as part of his declaratory judgment claim, that the uses proposed by these tenants and other uses were required to be permitted on his properties as grandfathered nonconforming uses — and thus did not require any zoning relief — the administrative remedy was to seek an Occupational Tax Certificate to open and operate such a business.[12]  Because neither Shelley nor his tenants pursued this remedy, Tyrone had no opportunity to formally decide whether these uses were permitted under the zoning ordinance or to amend the ordinance if they were not.  Shelley should have been aware of this defect in his claim, as it was the reason the federal court ruled that his similar claim in the earlier lawsuit was not ripe for judicial review.

Even if the prospective tenants' plans were rejected by some of the same people who would be involved in the final local government decision if Shelley made a formal request, we would not assume from their answer to the

---

[12]  Shelley points out that the town clerk explained in her deposition that she could issue an OTC to a business even if the business had not yet obtained approval from the zoning coordinator. She also explained, however, that as part of the OTC application process, the business was required to seek approval from the zoning coordinator and if it did not receive that approval, it would not be allowed to open.  In this way, the OTC application process allowed the town to monitor businesses and inform them if they violated the town's zoning ordinances.

prospective tenants what their answer would be in the formal process. See

Settles Bridge Farm, 292 Ga. at 439 ("As we have recently held, the conduct of

an administrative decision-maker 'outside of and prior to the normal

administrative process do[es] not ordinarily demonstrate futility.'" (citation

omitted)). Furthermore, although Ordinance 2011-13 was approved in a formal

process by the town council after Shelley expressed his opposition, that

legislative decision does not demonstrate that it would have been futile for

Shelley to seek individualized relief, because the council's decision to change

the zoning designation for *all* areas zoned C-2 to C-1 is not the same as a

decision about whether to grant a limited zoning change for *Shelley's* properties

to allow a particular requested use. See id. at 438 ("Even where a litigant would

be required to return to the same administrative body that had already denied it

relief, . . . the futility exception does not apply if the issue presented is not the

same as the issue previously decided adversely to the litigant.").[13]

---

[13] Shelley's failure to seek or obtain a decision from a local administrative agency influences the process by which he can appeal the superior court's decision to this Court. Challenges to zoning ordinances as applied to specific property generally require an application for discretionary appeal under OCGA § 5-6-35 (a) (1), because the appellant is seeking review of a "decision[ ] of the superior court[ ] reviewing [a] decision[ ] of . . . [a] local administrative agenc[y]," such as the denial of a zoning variance. See Schumacher v. City of Roswell, 301 Ga. 635, 637 (803 SE2d 66) (2017) (explaining that "decision" as used in OCGA § 5-6-35 (a) (1) refers to adjudicative rather than legislative or executive decisions and that "'[d]eterminations of an adjudicative nature . . . are

17

Accordingly, we affirm the superior court's grant of summary judgment to Tyrone on Shelley's as-applied claims, although we do so for a different reason than that relied on by the superior court. See Reed v. Reed, 295 Ga. 574, 578 (761 SE2d 326) (2014) ("We 'may affirm the judgment of a lower court so long as it is right for any reason.'" (citation omitted)).[14]

3.     Unlike his as-applied challenges, Shelley's claims that Ordinance 2011-13 and earlier zoning ordinances and amendments are void because they were enacted in violation of the procedural requirements of the ZPL or local

immediate in application, specific in application, and commonly involve an assessment of facts about the parties and their activities, businesses, and properties.'" (quoting State of Ga. v. Intl. Keystone Knights of the Ku Klux Klan, Inc., 299 Ga. 392, 401 (788 SE2d 455) (2016))). In this case, however, because Shelley did not formally seek individualized zoning-related relief from any town agency, there was no adjudicative decision of a local administrative agency for the superior court to review. Accordingly, Shelley is entitled to a direct appeal. Compare Hamryka v. City of Dawsonville, 291 Ga. 124, 126 (728 SE2d 197) (2012) (explaining that an appellant who does obtain an adjudicative zoning decision from a local administrative agency cannot circumvent the discretionary appeal process by bringing a collateral challenge to that decision in the superior court). Circumventing the discretionary application requirement by not seeking a local administrative decision on as-applied zoning issues will not lead to success on appeal, however, because the failure to exhaust administrative remedies will usually result in the simple rejection of the appeal on that ground.

[14]     The superior court based its ruling on Shelley's inverse condemnation claim on its conclusion that he failed to give proper ante litem notice to the town. Our recent decision in West v. City of Albany, 300 Ga. 743 (797 SE2d 809) (2017), however, construed the ante litem notice requirement in OCGA § 36-33-5 as limited to negligence cases brought against municipalities and specifically overruled Brownlow v. City of Calhoun, 198 Ga. App. 710 (402 SE2d 788) (1991), in which the Court of Appeals held that ante litem notice was required for a claim of inverse condemnation. See West, 300 Ga. at 748. We note that the town raised Shelley's failure to exhaust available administrative remedies in its motion for summary judgment as well as in its brief on appeal.

18

ordinances — his facial challenges — did not need to be raised before the town council or other local administrative body. See King v. City of Bainbridge, 272 Ga. 427, 428 (531 SE2d 350) (2000) ("'There is . . . no exhaustion requirement when, as in the present case, the property owner challenges the constitutionality of an ordinance on its face.'" (citations omitted)). Nevertheless, Shelley's facial challenges fail for a different reason: they are moot.

As noted above, on October 15, 2015, Tyrone enacted an entirely new zoning ordinance, Ordinance 2015-07, which expressly repealed and replaced Ordinance 2011-13 and its zoning map as well as all other prior zoning ordinances that conflicted with the new ordinance. Because Ordinance 2011-13 no longer has any effect, judicial resolution of Shelley's challenge to it "'would amount to the determination of an abstract question'" that would give him no relief. Scarbrough Group v. Worley, 290 Ga. 234, 236 (719 SE2d 430) (2011) (citation omitted). "[T]he existence of litigation does not, in and of itself, preclude a municipality or county from rectifying the deficiency highlighted by the litigation." Id. at 237. See also Douglas County v. Hasty, 237 Ga. 646, 646 (229 SE2d 435) (1976) (dismissing appeal as moot because a new zoning ordinance and map had been adopted and replaced the ordinance being

19

challenged).

Shelley argues that his challenge to Ordinance 2011-13, as well as his less-defined challenges to the town's older zoning ordinances and amendments, are not moot because "[a] ruling on which ordinance, if any, was in effect at each time relevant to Shelley's claims is essential to determine Shelley's pending declaratory rights and damages claims." This argument hinges on Shelley's contention that all of the zoning ordinances Tyrone has enacted since 1977 are invalid, so if we decided that Ordinance 2011-13 was void, we would need to consider the validity of the 2004 amendment, the 1997 zoning ordinance, and so forth. But Shelley cannot get beyond the most recent ordinance in that line, which is now Ordinance 2015-07, because he has not properly challenged that ordinance.

Shelley asserts that he properly tried to challenge Ordinance 2015-07 in the superior court by arguing in a document captioned "amended proposed pretrial order" that the ordinance was not lawfully passed under the procedural requirements set out in Tyrone's ordinances, but the clerk of the superior court removed his filing from the record because it appeared to be a proposed order and thus improperly filed. Shelley has since tried again to file the proposed

order into the superior court record, but apparently to no avail. A proper challenge to the new ordinance, however, would require an amendment of Shelley's complaint — which he could have done by right because no pretrial order has been entered yet, see OCGA § 9-11-15 (a) — not an amendment to the not-yet-filed pretrial order.

In any event, the superior court's order now on appeal did not rule on the validity of Ordinance 2015-07, and an appellant may not "on appeal raise questions or issues neither raised nor ruled upon by the trial court." Zant v. Moon, 264 Ga. 93, 94 (440 SE2d 657) (1994). Whether or not Shelley may be able to challenge Ordinance 2015-07 later in this proceeding or in a different proceeding, as things now stand, Ordinance 2015-07 is Tyrone's effective zoning ordinance and it is presumed to be valid. See City of Atlanta v. Tap Associates, 273 Ga. 681, 683 (544 SE2d 433) (2001).[15] As for Shelley's request

[15] We note that even if the validity of some of the town's older zoning ordinances may become relevant, the superior court was correct in concluding that any challenges to the 1997 zoning ordinance and 2004 zoning amendment are barred by res judicata or collateral estoppel. In the lawsuit he filed against Tyrone in 2007, Shelley challenged the constitutionality of the 1997 ordinance and 2004 amendment and asked for a declaratory judgment that the 1989 zoning ordinance was controlling. As explained above, the federal court ruled against Shelley on some of his claims, and the parties mutually dismissed with prejudice the remaining claims. "In cases in which there has been a voluntary dismissal of an action with prejudice upon agreement of the parties and accomplished with an order of court, we have held that the dismissal operates as an adjudication upon the merits and bars the right to bring another action on the same claim [against the same

21

for damages based on the town's alleged taking of his property, as explained in Division 2 above, regardless of the ordinance or ordinances on which it is based, that claim fails because Shelley did not exhaust his administrative remedies.

Consequently, the question of which of Tyrone's prior zoning ordinances was properly in effect at various times in the past has no present relevance in this case, and the superior court should have dismissed Shelley's facial challenges to the pre-2015 ordinances as moot; mootness is an issue of jurisdiction and thus must be determined before a court addresses the merits of a claim. See Collins v. Lombard Corp., 270 Ga. 120, 121 (508 SE2d 653) (1998). We therefore vacate the superior court's judgment to the extent that it addresses those challenges and remand for them to be dismissed unless they are properly amended to raise a challenge to the 2015 ordinance.[16]

---

parties]." Fowler v. Vineyard, 261 Ga. 454, 456 (405 SE2d 678) (1991). See also Hedquist v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 272 Ga. 209, 211 (528 SE2d 508) (2000). That Shelley was later unhappy with the dismissal and sued his attorneys for malpractice does not change the preclusive effects of the prior adjudication; the malpractice action could only have given Shelley relief from his attorneys.

[16] The superior court did not address this mootness issue when it was raised by the town, instead ruling that Shelley's facial challenges failed because the town council followed the ZPL and, to the extent it did not follow Tyrone's additional local procedural requirements for enacting an ordinance, the council did not have to because, quoting Little, 272 Ga. at 341, "'the ZPL has preempted the provisions in the City Charter for the purposes of the adoption and amendment of zoning ordinances.'" This pronouncement in Little may have been overbroad, because OCGA § 36-66-2 (b) (2) — a provision of the ZPL not mentioned in Little — says that local governments may

22

Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.

---

"[p]rovide by ordinance or resolution for procedures and requirements in addition to or supplemental to those required by this chapter," although it is not clear from the opinion what the local procedures at issue in <u>Little</u> were. Because the superior court should have dismissed Shelley's challenges to the prior ordinances as moot, we do not decide the validity or limitations of this statement in <u>Little</u> or whether the superior court applied it correctly.

23

Decided October 16, 2017.

Zoning ordinance. Fayette Superior Court. Before Judge Sams.

Taylor English Duma, Henry M. Quillian III, Diane F. LaRoss, for appellant.

Laurel E. Henderson, Theodore P. Meeker III, for appellee.