**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 8, 2023**

# In the Court of Appeals of Georgia

A22A1172. GWINNETT COUNTY et al. v. NETFLIX, INC. et al.

GOBEIL, Judge.

Gwinnett County, City of Brookhaven, and the Unified Government of Athens-Clarke County (collectively referred to as the "Appellants") filed a putative class action, seeking declaratory and other relief against several streaming service providers: Netflix, Inc.; Hulu, LLC; Disney DTC, LLC; DIRECTV, LLC; DISH Network Corp.; and DISH Network L.L.C. (collectively referred to as the "Defendants"). In their petition, the Appellants alleged that the Defendants violated Georgia's Consumer Choice for Television Act (the "TV Act" or the "Act"), OCGA 36-76-1 et seq., by providing streaming video services to Georgia customers without obtaining franchises and paying franchise fees to local governments as required by

the Act. The trial court granted the Defendants' motions to dismiss, and the Appellants filed the instant appeal. For the reasons explained below, we affirm.

*The TV Act*

In 2007, the General Assembly passed the TV Act, which creates a framework for cable operators and video service providers to obtain state franchises from the Secretary of State or to negotiate directly with municipal or county franchising authorities for service areas in which the providers deliver "cable service" or "video service." OCGA § 36-76-3 (a), (b). "Video service" is defined as "the provision of video programming through wireline facilities located at least in part in the public rights of way without regard to delivery technology, including Internet protocol technology. . . ." OCGA § 36-76-2 (16).[1] Excepted from this definition is "video programming provided as part of and via a service that enables users to access content, information, e-mail, or other services offered over the public Internet," (referred to in this opinion as "the public Internet exception"). Id.

For purposes of the TV Act:

---

[1] In 2022, the General Assembly amended the definitions of "cable service" and "video service" contained in the TV Act. See Ga. L. 2022, p. 807 § 1A. For purposes of this opinion, all mentions of OCGA § 36-76-2 refer to the 2007 version of the statute, unless otherwise noted.

2

"Franchise" means an initial authorization or renewal of an authorization issued by a franchise authority, regardless of whether the authorization is designated as a franchise, permit, license, resolution, contract, ordinance, certificate, agreement, or otherwise, that authorizes the construction or operation of a cable service provider or video service provider's network in the public rights of way.

OCGA § 36-76-2 (6). Once a franchise application is submitted to and approved by the Secretary of State, an affected municipal or county governing authority must permit a franchise holder the "authority to construct, maintain, and operate facilities along, across, or on the public right of way in the delivery of cable or video service[.]" OCGA § 36-76-4 (d) (2). In exchange, franchise holders must pay fees directly to local governing authorities in the holder's service area. OCGA § 36-76-6 (b). Such fees are calculated as a percentage of the franchise holder's gross revenues derived from its provision of cable or video services to subscribers located within the relevant service area. OCGA § 36-76-6 (a) (1).

Under the TV Act, local governing authorities are permitted to conduct, no more than once annually, audits of "the business records of the state franchise holder to the extent necessary to ensure payment in accordance with this Code section." OCGA § 36-76-6 (c). If the audit reveals a discrepancy in the amount of franchise

fees owed, "an action may be brought in a court of competent jurisdiction by an affected local governing authority seeking to recover an additional amount alleged to be due[.]" Id.

*Procedural Background*

In November 2020, the Appellants filed a petition in the Superior Court of Gwinnett County seeking class certification on behalf of themselves and other similarly situated local governments, requesting declaratory and other relief against the Defendants, and asserting that the Defendants are providing "video service" without complying with the TV Act's requirements. Specifically, the Appellants alleged that the Defendants violated the TV Act by failing to seek franchise authorization (OCGA § 36-76-3 (a) (1)), give notice of their intent to provide service within the Appellants' geographic boundaries (OCGA § 36-76-4 (c)), or pay franchise fees as required under the Act (OCGA § 36-76-6). The Appellants also claimed the Defendants' failure to obtain franchises and pay associated fees violated various local ordinances. As relevant here, the Appellants asked the trial court for (1) a declaration that the Defendants provide "video service" within the meaning of the TV Act, they have failed to comply with the Act, and they owe franchise fees dating back to July 1, 2007; (2) an accounting of all monies, including interest and penalties, the

4

Defendants owe the Appellants and all putative class members; and (3) an injunction restraining the Defendants from engaging in business within the Appellants' and class members' respective geographic boundaries and deriving gross revenues therefrom without paying the required franchise fees. And finally, (4) the Appellants raised a claim for unjust enrichment, alleging that the Defendants have

> received the benefit of doing business in [the Appellants'] and other class members' jurisdictions without complying with [their] statutory obligations, been aware that [they were] doing business without complying with [their] statutory obligations, and accepted and retained this benefit under circumstances that are inequitable or unjust, i.e., by depriving [the Appellants] and other class members of monies and other things due under the statutes, codes, and ordinances that [the] Defendants refuse to honor.

DIRECTV removed the case to federal court in January 2021, and, in August 2021, the federal court remanded the case to the trial court under the doctrine of comity abstention.[2] Thereafter, the Defendants moved to dismiss the complaint. In addition to filing a motion to dismiss the Appellants' complaint, Netflix raised a

---

[2] The United States Supreme Court's comity doctrine requires a "scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts[.]" *Fair Assessment in Real Estate Assn. v. McNary*, 454 U. S. 100, 108 (III) (A) (102 SCt 177, 70 LE2d 271) (1981) (citation and punctuation omitted).

counterclaim under 42 USC § 1983, alleging that the imposition of franchise fees would violate its civil and constitutional rights.

After a hearing, the trial court granted the Defendants' motions, dismissing the complaint with prejudice in February 2022. Specifically, the court ruled that the Appellants did not have an express or implied right of action under the TV Act to pursue their claims, and the Appellants had failed to allege essential elements of the limited causes of action that do exist under the Act. Within this ruling, the court noted that the TV Act applies only to "franchise holders," and the Appellants' claims are premised on the allegation that the Defendants do not hold state franchises. The court also determined that the TV Act does not apply to the Defendants because they are "non-facilities-based" streaming services, rather than "facilities-based" services, such as cable or telephone companies that construct or operate networks in the Appellants' public rights of way.

Alternatively, the trial court ruled that even if the TV Act could reach non-facilities-based streaming content, because the Defendants provide access to their streaming video content via the public Internet, they are excluded from the definition of "video service provider[s]," under the public Internet exception and therefore the Act does not apply. See OCGA § 36-76-2 (16), (17). Citing OCGA § 36-76-6 (a) (2)

6

(which states that franchise holders are not required to pay fees until 15 days after they receive notice from local governing authorities of the amount of fees the governing authorities intend to charge), the trial court also found that the Appellants' claim for fees is barred by their failure to allege that they provided the Defendants with the required notice. As to the Appellants' remaining claims for declaratory judgment, accounting, and injunctive relief, the trial court ruled that these claims were due to be dismissed because the Appellants lacked a cause of action under the TV Act. Finally, the court "conditionally dismisse[d]" Netflix's counterclaim and denied as moot the Appellants' motion to dismiss Netflix's counterclaim.[3] This appeal followed.

*Analysis*

This Court reviews de novo a trial court's ruling on a motion to dismiss for failure to state a claim, "construing the pleadings in the light most favorable to the

---

[3] In its order, the trial court also found that neither Netflix's nor Disney's streaming services constitute "video programming" as defined by the TV Act. Although the Appellants did not enumerate this ruling as error, they included argument on this issue in their brief on appeal. However, "an appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of errors." *Felix v. State*, 271 Ga. 534, 539 n. 6 (523 SE2d 1) (1999). In any event, based on our holding in Divison 1, infra, we need not address this argument.

plaintiff and with any doubts resolved in the plaintiff's favor," *Babalola v. HSBC Bank, USA, N.A.*, 324 Ga. App. 750, 750 (751 SE2d 545) (2013) (citation and punctuation omitted), and "viewing all well-pled allegations in the complaint as true," *Carter v. Cornwell*, 338 Ga. App. 662, 662 (791 SE2d 447) (2016) (citation and punctuation omitted).

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof, and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

*Hendon Properties, LLC v. Cinema Dev., LLC*, 275 Ga. App. 434, 435 (620 SE2d 644) (2005) (citation and punctuation omitted).

1. The Appellants argue that the trial court erred in concluding that the TV Act does not provide them with a cause of action against the Defendants. Specifically, they challenge the trial court's rulings that they lack an express right of action under

8

the TV Act; and that a private right of action cannot be implied from the TV Act. We are unpersuaded.

In determining the effect of the TV Act, we presume that "the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted). To that end, we afford the statutory text "its plain and ordinary meaning," and we read that text in the "most natural and reasonable way, as an ordinary speaker of the English language would." Id. at 172-173 (1) (a) (citations and punctuation omitted). We "look to the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it." *Scott v. State*, 299 Ga. 568, 571 (2) (788 SE2d 468) (2016). "Where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning generally ends." *City of College Park v. Martin*, 304 Ga. 488, 489 (818 SE2d 620) (2018) (citation and punctuation omitted). See also OCGA § 1-3-1 (b) ("[i]n all interpretations of statutes, the ordinary signification shall be applied to all words").

Employing these rules of statutory construction, the TV Act clearly provides local governing authorities with two express causes of action for violations of the TV

9

Act, neither of which applies to the instant case. First and as discussed above, the TV Act requires applications for state franchises to be submitted to and approved by the Secretary of State. OCGA § 36-76-4 (a). Under this arrangement, local governments then provide notice to the Secretary of State and the state franchise holder of the franchise fee rate. OCGA § 36-76-6 (a) (2). Should a dispute arise as to the amount of franchise fees owed to a local governing authority after an audit, OCGA § 36-76-6 (c) provides that "an action may be brought in a court of competent jurisdiction by an affected local governing authority seeking to recover an additional amount alleged to be due or by a state franchise holder seeking a refund of an alleged overpayment . . . ." Here, the Appellants do not allege that the Defendants are state franchise holders or that the Appellants conducted audits before instituting this action. Accordingly, the express right of action provided in OCGA § 36-76-6 (c) is inapplicable.

The second express right of action set forth in the TV Act is found in OCGA § 36-76-11 and also does not apply here. Subsection (c) of OCGA § 36-76-11 permits residential subscribers who believe they are being denied access to service based on their low-income status to file a complaint with the affected local governing authority. OCGA § 36-76-11 (a), (c). In turn, the local governing authority must serve

a copy of the complaint on the subject cable or video service provider, which must then file a response to the complaint. OCGA § 36-76-11 (c). Next, if the local governing authority is not satisfied with the response, the parties proceed to mediation. If mediation fails, the local governing authority may file a complaint with a court of competent jurisdiction. Id.

> If such court finds that the holder of a state franchise is in material noncompliance with this Code section, the holder shall have a reasonable period of time, as specified by the court, to cure such noncompliance. The court may also award the affected local governing authority its reasonable attorneys fees in seeking enforcement of subsection (a) of this Code section.

Id.

As demonstrated above, the General Assembly knew how to confer an explicit right of action onto local governments had it wished to do so (beyond the express causes of action above). Here, the General Assembly failed to use such language with regard to the enforcement powers of an affected local governing authority based on a service provider's failure to obtain or apply for a franchise. That notable absence from the statute reinforces our conclusion that the General Assembly did not intend to create an express right of action in local governing authorities in the manner urged

11

by the Appellants. See *Govea v. City of Norcross*, 271 Ga. App. 36, 41-42 (1) (608 SE2d 677) (2004) (holding that Peace Officer Standards and Training (POST) Act did not expressly provide private cause of action for damages for violations of reporting requirements where, among other reasons, "POST Act expressly authorizes civil actions, but only by the POST Council, only for injunctive relief, and only under certain circumstances not alleged here"). Accordingly, the trial court did not err in ruling that the Appellants lack an express right of action under the TV Act. See id.

Nevertheless, the Appellants argue that the TV Act implies that they have a right to bring this action, maintaining that the Defendants cannot "avoid the TV Act by not obtaining a statewide authorization." .[4] However, we disagree. First, "it is well settled that violating statutes and regulations does not automatically give rise to a civil cause of action by an individual claiming to have been injured from a violation thereof." *Govea*, 271 Ga. App. at 41 (1). Further, Georgia has "longstanding

---

[4] The Appellants argue that failure to find an implied right would "eviscerate" the TV Act "by encouraging video service providers to ignore it entirely," — suggesting that finding no implied right of action here would yield an absurd result. However, as the trial court noted, we are limited to applying the Act as written, not as we might think it should be. Policy arguments extending beyond the principles of statutory interpretation are considerations best left to the legislature. And, notably the Act is not without enforcement mechanisms against statewide franchise holders as discussed infra.

precedential authority rejecting the creation of implied private rights of action[.]" *Somerville v. White*, 337 Ga. App. 414, 417-418 (1) n. 14 (787 SE2d 350) (2016) (collecting cases). Also, it is the Appellants' burden here to overcome Georgia's presumption against implied rights of action. See *Brooks-Powers v. MARTA*, 260 Ga. App. 390, 392 (1) (579 SE2d 802) (2003). This they fail to do.

"[E]ven when a private right of action is alleged to be implied by the statute, the indication that the legislature meant to impose a civil penalty must be found in the provisions of the statute at issue, not extrapolated from the public policy the statute generally appears to advance." *Walker v. Oglethorpe Power Corp.*, 341 Ga. App. 647, 657 (2) (b) (802 SE2d 643) (2017) (citation, punctuation and emphasis omitted), disapproved on other grounds by *Hanham v. Access Mgmt. Group L.P.*, 305 Ga. 414, 418 (2) (825 SE2d 217) (2019).

Considering the principles above, we decline to imply a right of action under the TV Act for two reasons. First, as noted above, the TV Act defines "franchise" as "an initial authorization or renewal of an authorization issued by a franchise authority, . . . that authorizes the *construction or operation of a cable service provider or video service provider's network in the public rights of way*." OCGA § 36-76-2 (6) (emphasis supplied). Thus by its very terms, the obligation to obtain a franchise is

13

triggered only where a cable or video service provider constructs or operates a network in the public rights of way. The Appellants' allegations are insufficient to plausibly suggest that the Defendants operate networks in the Appellants' rights of way, and they concede as much on appeal.

Second, under the TV Act, the obligation to pay franchise fees applies only to "[t]he holder of a *state* franchise[.]" OCGA § 36-76-6 (a) (1) (emphasis supplied). And, the sole authority for approving a state franchise application lies with the Secretary of State. OCGA § 36-76-2 (7). Pursuant to OCGA § 45-15-12, the Attorney General "is authorized to file and prosecute civil recovery actions in the name of the state against any person, firm, or corporation which violates any statute while dealing with the state[.]" Considering the fact that the TV Act's franchise fee obligation arises only in connection with the issuance of a state franchise, over which municipalities and counties have no authority, we conclude that even if the TV Act imposes duties on certain video service providers to obtain franchises, the Appellants lack standing

to sue the Defendants for breaching those duties.[5] *Walker*, 341 Ga. App. at 658 (2)

(b).

2. The Appellants argue that, even if they lack a right of action under the TV

Act, their remaining claims — for declaratory judgment, injunctive relief, accounting,

and unjust enrichment — remain viable. The Defendants counter that the Appellants'

lack of a right of action to enforce the TV Act against the Defendants is fatal to these

additional claims. For the reasons that follow, we find that these remaining claims

fail.

---

[5] We are mindful that OCGA § 36-76-3 (a) (2) provides cable or video service providers the option of negotiating directly with municipal or county franchise authorities. However, the TV Act does not govern the payment of fees under such arrangements. See generally preamble to Ga. L. 2007, p. 719 (amending Title 36 "to provide for the expedited franchising of cable and video services by the Secretary of State . . . "). Instead, with regard to pre-existing local franchise agreements, the Act states that incumbent video service providers (those providers who provided video service "in a municipality or in an unincorporated area of a county on January 1, 2008[ ]" (OCGA § 36-76-2 (9)) that apply for state franchises must continue to provide certain public, educational, or governmental access support until the local franchise would have expired. OCGA § 36-76-4 (g). Importantly, the TV Act notes that franchise fees authorized thereunder are in lieu of any permit, encroachment, degradation, "or other fee that could otherwise be assessed on a state issued franchise holder for the holder's occupation or work within the public right of way," and the Act does not "restrict the right of any municipal or county governing authority to impose ad valorem taxes, sales taxes, or other taxes lawfully imposed on a majority of all other businesses within such municipality or county." OCGA § 36-76-6 (h). In any event, the Appellants are not seeking local franchise agreements with the Defendants.

We first address DIRECTV's argument that the Appellants' declaratory judgment claim is moot. "This Court has a duty to inquire into its jurisdiction to entertain each appeal," *City of Dublin School Dist. v. MMT Holdings, LLC*, 351 Ga. App. 112, 114 (2) (830 SE2d 487) (2019) (citation and punctuation omitted), and "mootness is an issue of jurisdiction and thus must be determined before a court addresses the merits of a claim." *Shelley v. Town of Tyrone*, 302 Ga. 297, 308 (3) (806 SE2d 535) (2017). Specifically, DIRECTV asserts that recent amendments to the TV Act have rendered the Appellants' declaratory judgment claim moot. We agree.

"The purpose of the Declaratory Judgment Act[, OCGA § 9-4-1 et seq.,] is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Drawdy v. Direct Gen. Ins. Co.*, 277 Ga. 107, 109 (586 SE2d 228) (2003) (citation and punctuation omitted). It is well settled that "declaratory judgment is not available where a judgment cannot guide and protect the petitioner with regard to some future act[.]" Id. (citation and punctuation omitted).

Under the current version of OCGA § 36-76-2 (16), excepted from the definition of "[v]ideo service" is "video programming accessed via a service that enables users to access content, information, email, or other services offered over the

16

internet, including digital audiovisual works." The Appellants concede that this change to the TV Act "expressly exclude[s] streaming video from [the Act's] purview."

Despite this concession, the Appellants contend that they are entitled to pursue a declaratory judgment because they are "entitled to a judicial construction of the original statute which will guide the parties moving forward as to how back-fees are properly calculated." Citing *Acevedo v. Kim*, 284 Ga. 629 (669 SE2d 127) (2008), the Appellants argue that declaratory relief is appropriate — even though some of the challenged conduct has already occurred — because such relief would constitute a legally binding determination that the Appellants' claim for an unpaid debt is valid.

In *Acevedo*, the father sought a declaratory judgment seeking a determination of the amount due for past child support payments. 284 Ga. at 629. In concluding that the father stated a claim upon which relief could be granted, our Supreme Court held that "fixing the precise amount of a debt currently due under a contract or under an unclear prior judgment is a proper basis for a declaratory judgment action." Id. at 634 (2). The case at bar involves neither an enforceable contract, nor a prior unclear judgment, and therefore, *Acevedo* does not control. To the contrary, the amendments to the TV Act eliminate the "actual controversy" requirement for a court to issue a

declaratory judgment, and this claim is therefore moot. See *Sweet City Landfill, LLC*

*v. Elbert County*, 347 Ga. App. 311, 315-317 (2) (818 SE2d 93) (2018) (company's

action against county seeking declaratory and injunctive relief, including a ruling that

county's solid waste ordinance was unconstitutional, rendered moot by county's

repeal and replacement of challenged ordinance; because contested ordinance was no

longer in effect, judicial resolution of company's challenge would amount to

determination of an abstract question that would give no relief when ordinance was

never enforced against company and there was no evidence that county intended to

re-enact repealed ordinance).

Alternatively, even if the Appellants' claim for declaratory judgment were not

moot, this claim fails on substantive grounds. The Declaratory Judgment Act provides

in relevant part:

> In cases of actual controversy, the respective superior courts of this state
> . . . shall have power, upon petition or other appropriate pleading, to
> declare rights and other legal relations of any interested party petitioning
> for such declaration, whether or not further relief is or could be prayed;
> and the declaration shall have the force and effect of a final judgment or
> decree and be reviewable as such.

OCGA § 9-4-2 (a). Further, "the Declaratory Judgment Act merely creates a procedural device for the declaration of rights between parties and does not otherwise override substantive or procedural law." *Gardei v. Conway*, 313 Ga. 132, 136 (1) (868 SE2d 775) (2022). See also *Baker v. City of Marietta*, 271 Ga. 210, 213 (1) (518 SE2d 879) (1999) ("[t]he Declaratory Judgment Act provides a means by which a superior court simply declares the rights of the parties or expresses its opinion on a question of law, without ordering anything to be done") (citation and punctuation omitted). Thus, it follows that because we have determined that the Appellants lack a private right of action, their declaratory judgment claim is insufficient as a matter of law. See *Leitch v. Fleming*, 291 Ga. 669, 670 (1) (732 SE2d 401) (2012) ("[f]or a controversy to justify the making of a declaration, it must include a right claimed by one party and denied by the other, and not merely a question as to the abstract meaning and validity of a statute") (citation and punctuation omitted).

The Appellants rely on *Athens-Clarke County v. Walton Elec. Membership Corp.*, 265 Ga. 229 (454 SE2d 510) (1995) ("*Athens-Clarke County II*"), for the proposition that a local government may bring a declaratory judgment action to resolve a dispute about whether a company conducting business in the government's rights of way must obtain a franchise and pay fees. However, we find that their

19

reliance on this case is misplaced. In *Athens-Clarke County II*, the newly-formed unified government, consisting of the former City of Athens and the former Clarke County, sought a declaration that it was entitled to collect franchise fees from an electric public utility under the Georgia Territorial Electric Service Act (the "Electric Act"), OCGA § 46-3-1 et seq. *Athens-Clarke County v. Walton Elec. Membership Corp.*, 211 Ga. App. 232, 232 (439 SE2d 504) (1993). Prior to the creation of the unified government, the utility operated only in unincorporated Clarke County, and therefore did not pay franchise fees under the Electric Act, which permits municipalities to grant franchises to electric suppliers and condition such grants upon payment of franchise fees. *Athens-Clarke County II*, 265 Ga. at 229, 231 (2). Ultimately, the *Athens-Clarke County II* court held that the unified government was authorized to assess franchise fees even though an agreement between it and the electric supplier was not yet in place. From this holding, the Appellants contend that they were authorized to bring a declaratory judgment action in the present case, and whether the Defendants are franchise holders is not determinative of the Appellants' ability to assess fees against them.

*Athens-Clarke County II* is distinguishable from the instant case for three important reasons. First, whether the unified government was entitled to seek a

20

declaratory judgment vel non was not at issue in *Athens-Clarke County II*, and the decision does not indicate that the electric supplier challenged the unified government's right to pursue declaratory relief in the trial court.

Second, in concluding that an agreement between the unified government and the electric supplier was not a prerequisite for the unified government to collect fees, our Supreme Court relied on the unified government's ordinance, which rendered the electric supplier liable for payment of fees so long as the supplier continued to use and occupy the unified government's streets and rights of way and provide electricity to residents. *Athens-Clarke County II*, 265 Ga. at 231-232 (3). In essence, the local ordinances created an obligation in the electric supplier to remit franchise fees to the unified government, and hence a declaration that the supplier was liable was germane to the issue of whether the ordinance created an agreement. Here, the Appellants contend that they are entitled to pursue this action to enforce their respective local ordinances, and they maintain that the trial court erroneously ignored these ordinances. However, "[i]t is well established that in order for a superior court or this [C]ourt to consider city or county ordinances they must be alleged and proved, and the proper method of proving a city or county ordinance is by production of the original or of a properly certified copy." *Sweeney v. Lowe*, 325 Ga. App. 883, 883

21

(755 SE2d 813) (2014) (citation and punctuation omitted). And, in the case sub judice, the relevant ordinances do not appear in the record, certified or otherwise. Accordingly, "[b]ecause the record does not contain proper proof of the local ordinance upon which [the Appellants rely], we cannot consider [them], and any argument based on [their] purported language provides no basis for reversing the trial court's order." Id. at 884 (citation and punctuation omitted).

Third, the Electric Act governs the relationship between municipalities and electric suppliers. See OCGA § 46-3-3 (3), (5). Notably, the Electric Act does not require a supplier to attain the status of franchise holder before the obligation to pay fees is triggered. See *Athens-Clarke County II*, 265 Ga. at 231 (2) (municipality authorized to condition grant of franchise upon requirements that municipality deems wise, including payment of a franchise fee; Electric Act "does not forbid a municipality exercising its right to condition the grant of a franchise from charging franchise fees to electric suppliers" who had yet to obtain franchises). Conversely, in the instant case (as the trial court noted in its order) the statutes that the Appellants claim entitle them to relief apply only to the "holder of a state franchise." See, e.g., OCGA § 36-76-6 (a) (1) ("[t]he holder of a state franchise . . . shall pay to each affected local governing authority . . . a franchise fee"). Because it is undisputed that

22

none of the Defendants in the instant case hold franchises, the rationale set forth in *Athens-Clarke County II* does not support the Appellants' claim for declaratory judgment.

As to the claims for injunctive relief and an accounting, the Appellants' sole argument in support of reversing this portion of the trial court's ruling is that they have a valid claim under the TV Act. However, as discussed in Division 1, supra, because the TV Act does not provide the Appellants with a cause of action, their related claims for injunctive relief and an accounting fail. See *Bellsouth Telecommunications, LLC v. Cobb County*, 352 Ga. App. 110, 111-112 (2) (834 SE2d 124) (2019) (holding that counties lacked an implied right of action to pursue damages for defendants' alleged failure to collect charges for emergency 9-1-1 services, and therefore counties were barred from bringing claims for accounting against defendants); *Friedlander v. HMS-PEP Products, Inc.*, 226 Ga. App. 123, 125-126 (2) (485 SE2d 240) (1997) (where no private right of action existed for enforcement of Federal Food, Drug, and Cosmetic Act, individual plaintiff lacked standing to bring any sort of claim against defendant for violating Act).

As to their claim for unjust enrichment, the Appellants argue that they sufficiently pleaded this count by alleging that the "Defendants accepted the value of

23

being able to provide their video programming through [the Appellants'] rights of way, and the benefit of doing business in [the Appellants'] jurisdictions."

> A claim for unjust enrichment exists where a plaintiff asserts that the defendant induced or encouraged the plaintiff to provide something of value to the defendant; that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof; and that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it.

*Collins v. Athens Orthopedic Clinic*, 356 Ga. App. 776, 778 (2) (849 SE2d 213) (2020) (citation and punctuation omitted). Here, the Appellants' unjust enrichment claim is duplicative of their allegations that the Defendants violated the TV Act. Because the Defendants were not obligated to pay franchise fees to the Appellants (as they were not franchise holders), it necessarily follows that the Defendants were not unjustly enriched by their failure to pay such fees. Furthermore, the Appellants "alleged unjust enrichment as a separate and distinct cause of action and not as an alternate remedy for a failed contract. Therefore, this claim fails as a matter of law." Id. at 779 (2) (footnote omitted).

3. As noted above, with Netflix's consent, the trial court "conditionally dismisse[d]" Netflix's counterclaim and denied as moot the Appellants' motion to

dismiss the counterclaim. The Appellants argue that because the trial court's dismissal order should be reversed, the portion of its order mooting the Appellants' motion to dismiss Netflix's counterclaim should be reversed as well. However, because we affirm the trial court's dismissal of the Appellants' petition, we likewise affirm the court's dismissal of Netflix's counterclaim.

4. Based on our conclusion that the Appellants lack a cause of action under the TV Act, we need not address their remaining arguments.

*Judgment affirmed. Land, J., concurs, McFadden, P. J., concurs fully and specially.*

A22A1172. GWINNETT COUNTY et al. v. NETFLIX, INC. et al.

McFADDEN, Presiding Judge, concurring fully and specially.

I concur in the majority's holding that none of the remedies that appellants would invoke are available. But I am troubled by the implication that appellees could have financial obligations to appellants that appellants are powerless to enforce. So I would first consider whether the appellees have such obligations. They do not.

At issue is the proper construction of Chapter 76 of Title 36, Local Government, which is entitled "Expedited Franchising of Cable and Video Services." Its short title is "the 'Consumer Choice for Television Act.'" OCGA § 36-76-1.

More specifically the issue is whether content providers like the appellees are "cable service provider[s] or [ ] video service provider[s]" under OCGA § 36-76-6 (a) and consequently whether they are required under the Act to secure franchises and pay franchise fees. They are not.

Generally in this context, a franchise is a "government-conferred right or privilege to engage in a specific business or to exercise corporate powers." FRANCHISE, Black's Law Dictionary (11th ed. 2019). Under the Act the right or privilege conferred is "the construction or operation of a cable service provider or video service provider's network in the public rights of way." OCGA § 36-76-2 (6).

The first operative provision of that Act, following "Short Title" and "Definitions," provides that entities or persons "seeking to provide cable service or video service" can "elect from among the franchise options as set forth" therein. OCGA § 36-76-3 (a) (1). The options are to secure franchises from local governments, OCGA § 36-76-3 (a) (2), (3), or from the secretary of state. OCGA § 36-76-3 (a) (4).

"In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). Those can be derived from the text of the Act

2

before us. The old law was that franchises authorizing cable and video service providers to lay cable in public rights of way were available only from local governments, so providers were required to secure franchises from each local government in which they sought to provide service. See also LOCAL GOVERNMENT: Expedited Franchising of Cable and Video Services, 24 Ga. State Univ. L. Review 223, 235 (2007). The evil was that consumers' choices with respect to cable and video services were not being broadened as expeditiously as was deemed desirable because of the difficulty of securing a franchise from every local government. The remedy was to make such franchises also available statewide from the secretary of state. OCGA § 36-76-3 (4).

It follows that the intended meaning of "cable service provider[s] or [ ] video service provider[s]" in OCGA § 36-76-6 (a) was not an expansion of the types of entities required to secure franchises. Content providers like appellees do not "construct[ ] or operat[e] . . . network[s] in the public rights of way," see OCGA § 36-76-2 (6). So the Act should not be read to require such content providers to secure franchises or to pay franchise fees.